PEOPLE v BUFKIN

PEOPLE v ANDREW CARTER

OPINION OF THE COURT

1. HOMICIDE—FELONY MURDER—PERMISSIBLE VERDICTS—DECISIONAL
   RULE—PROSPECTIVE APPLICATION.

   A trial judge in a prosecution for felony murder, *i.e.,* any homi-
   cide committed in the perpetration, or the attempt to perpe-
   trate one of the statutorily specified offenses, must instruct the
   jury that its verdict shall be guilty of murder in the first degree
   or not guilty; this decisional rule is prospective only and is
   effective on the release date of this opinion to the parties,
   November 27, 1972 (MCLA 750.316).

2. HOMICIDE—FELONY MURDER—INCLUDED OFFENSES.

   Felony murder is a creature of statute in which the element of
   premeditation is conclusively presumed by proof of the perpe-
   tration or attempt to perpetrate a specific felony; therefore,
   neither second-degree murder nor manslaughter can possibly
   be lesser included offenses of felony murder since the first two
   crimes and felony murder are mutually exclusive (MCLA
   750.316, 750.317, 750.321).

3. HOMICIDE—FELONY MURDER—SECOND-DEGREE MURDER—EVIDENCE
   —SUFFICIENCY.

   A jury finding that defendant and a codefendant had planned and

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 484, 499, 525 *et seq.*
[2, 3] 40 Am Jur 2d, Homicide § 45.
[4] 40 Am Jur 2d, Homicide § 545.
[5] 53 Am Jur, Trial § 1033.
[6] 40 Am Jur 2d, Homicide §§ 35, 37, 44.
[7] 40 Am Jur 2d, Homicide §§ 46, 525 *et seq.*
[8] 40 Am Jur 2d, Homicide §§ 35, 474.
[9] 40 Am Jur 2d, Homicide §§ 53, 267.
[10] 40 Am Jur 2d, Homicide §§ 29, 37.
   What amounts to participation in homicide on part of one not the
   actual perpetrator, who was present without preconcert or con-
   spiracy, 12 ALR 275.
[11] 40 Am Jur 2d, Homicide § 559.

had attempted to perpetrate an armed robbery during which the victim was killed would have been warranted where the evidence, with its permissible inferences, showed: that defendant drove his codefendant to the scene of the crime, picked him up afterwards, and knew that the codefendant had a .22-caliber silverplated pearl-handled handgun, described by a witness as being in the possession of a man running from the murder scene; that the victim was killed by a. shot from a .22-caliber weapon, and that defendant told a witness that his codefendant did not get any money in the holdup; the fact that the jury found defendant guilty of second-degree rather than first-degree murder affords no basis for reversing the conviction because the verdict was a permissible one under the judge's instructions which correctly stated one version of the applicable law, *i.e.,* a second-degree murder verdict is permissible where felony murder is charged (MCLA 750.316).

4. HOMICIDE—FELONY MURDER—SECOND-DEGREE MURDER—COMPROMISE VERDICT.

A verdict of guilty of second-degree murder returned against a defendant charged with a felony murder does not mandate the conclusion that the felony, or attempted felony, charged, was not involved in the killing; the jurors may have arrived at a compromise verdict.

5. CRIMINAL LAW—COMPROMISE VERDICT.

A compromise verdict in a criminal case is not infirm as a matter of law; a verdict cannot be upset by speculation or inquiry into how the jury reached its verdict.

6. HOMICIDE—FELONY MURDER—AIDING AND ABETTING—KNOWLEDGE.

The test for determining if a defendant aided and abetted in the commission of a felony murder is whether defendant participated in the legal sense in the attempted felony, not whether defendant knew beforehand that his accomplice would kill the victim in the attempt.

CONCURRENCE IN PART, DISSENT IN PART BY LESINSKI, C. J.

7. HOMICIDE—FELONY MURDER—SECOND-DEGREE MURDER—INSTRUCTIONS TO JURY.

*A verdict of guilty of second-degree murder returned in a trial for a felony murder mandates the conclusion that no felony or attempted felony was involved in the killing where the jury was instructed that they could consider a verdict of second-*

*degree murder or manslaughter only if they found that there was no robbery or attempted robbery (MCLA 750.316).*

8. HOMICIDE—FELONY MURDER—SECOND-DEGREE MURDER—EVIDENCE —SUFFICIENCY.

*A judgment of acquittal notwithstanding a verdict of guilty of second-degree murder should have been granted to a defendant charged with participating in the killing of a man during an attempted robbery, where the overwhelming evidence was that defendant drove the car and his codefendant did the shooting, and there was no evidence that the defendant and codefendant had any common design other than the hypothesized robbery which the jury expressly rejected in its verdict of second-degree murder (MCLA 750.316, 750.317).*

9. HOMICIDE—SECOND-DEGREE MURDER—MALICE—INFERENCES.

*The malice necessary for second-degree murder may be inferred from the type of weapon used and the manner in which the crime was committed, but this inference goes no further than to supply the requisite intent of the actual killer and those engaged in a common design with him (MCLA 750.317).*

10. HOMICIDE—FELONY MURDER—AIDING AND ABETTING—EVIDENCE.

*A conviction of aiding and abetting the commission of a felony murder must be supported by evidence of the accessory's common intent and concert of action; mere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abettor (MCLA 750.316, 750.317).*

11. HOMICIDE—FELONY MURDER—SECOND-DEGREE MURDER—EVIDENCE.

*A motion for acquittal notwithstanding the verdict was properly denied to a defendant charged with killing a man during an attempted robbery where the evidence was sufficient to convict him of second-degree murder, the trial judge, sua sponte, correctly charged the jury regarding second-degree murder, and defendant failed to object to the charge thus waiving any possible right he might have to object on appeal, absent any manifest injustice.*

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J. Submitted Division 1 October 6, 1971, at Detroit. (Docket Nos. 8317, 8408.) Decided November 27, 1972. Leave to appeal applied for.

Andrew Bufkin and Andrew Carter were convicted of second-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Michael R. Mueller,* Assistant Prosecuting Attorney, for the people.

*Burton L. Borden,* for defendant Bufkin on appeal.

*Kenneth R. Teschendorf (M. Gerald Schwartzbach,* of counsel), for defendant Carter on appeal.

Before: LESINSKI, C. J., and V. J. BRENNAN and O'HARA,* JJ.

O'HARA, J. We concur with the Chief Judge in affirming the conviction of defendant Bufkin. As we read the record there was testimony adduced together with the reasonable inferences therefrom which would have sustained a verdict of guilty of murder in the first degree[1] as to defendant Bufkin. That the jury found him guilty of murder in the second degree[2] affords no basis for reversing his conviction. The verdict was a permissible one under the charge of the court as given. The charge stated one version of the applicable law that has been approved by our Supreme Court, namely that under a charge of first-degree felony murder a verdict of guilty of murder in the second degree is

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.316; MSA 28.548.

[2] MCLA 750.317; MSA 28.549.

permissible. However, as noted by the late Justice
DETHMERS writing for a unanimous Court in *People
v Dupuis,* 371 Mich 395 (1963), there is also
authority for holding that in felony-murder prose-
cutions, the trial judge may properly instruct the
jury that they should find the defendant guilty of
murder in the first degree or not guilty, citing
*People v Repke,* 103 Mich 459 (1895). This case has
never been overruled. With this state of preceden-
tial authority we believe it is our proper province
to choose what we consider the better rule of law
and render it controlling. Our holding is of course
reviewable by the Supreme Court, but if undis-
turbed by that Court we understand the trial
bench will be bound thereby. Specifically we make
clear that our opinion is to have no retrospective
effect and to be effective as of the date of the
release of this opinion to the parties.

We here hold decisionally that in a prosecution
for felony murder, that is to say any homicide
committed in the perpetration, or the attempt to
perpetrate one of the statutorily specified offenses,
the trial judge is obliged to instruct the jury that
its verdict shall be guilty of murder in the first
degree or not guilty. We do not reach this conclu-
sion lightly. We have reviewed all of the case law
of our state and of many other jurisdictions. We
adopt this rule because "felony murder", so called,
is a creature of statute in which the element
premeditation is conclusively presumed by proof of
the perpetration or attempt to perpetrate a specific
felony. As such, neither second-degree murder nor
manslaughter can possibly be lesser included of-
fenses. These two latter crimes and felony murder
are mutually exclusive offenses.

However, since the trial judge in this case in-
structed the jury according to one of two permissi-
ble alternatives, we must examine the verdict of

guilty of murder in the second degree as to defendant Carter under that charge as given. The result reached in this case in part moves us to hold as we do as to future cases.

If defendant Carter's conviction is to be upheld, there must have been testimony or circumstantial evidence together with the permissible inferences therefrom that Carter knew of the intention of Bufkin to perpetrate or attempt to perpetrate a robbery; and that he, Carter, actively participated in the perpetration or attempt to perpetrate a robbery.

What then was the testimony and other evidence that would meet the legal requirement of "participation" by Carter?

Incontestably, Carter drove the car to the place of the killing. Incontestably, Carter stopped the car prior to reaching the scene and picked up Bufkin for no explained reason. Incontestably, after the victim was killed, Carter drove along slowly and picked up Bufkin again. Witnesses testified, and it was the province of the jury to accept or reject the testimony, that Carter knew that Bufkin had a .22-caliber silverplated handgun. The cause of death was a gunshot wound from a .22-caliber weapon. One witness testified that he observed someone running from the vicinity of the killing carrying a silverplated, pearl-handled handgun. Another witness testified that at the time and place involved she saw someone "running out down the alley * * * . He stood and becked for the car to come." A witness testified that when Bufkin re-entered the car Carter asked him "What happened * * * how come he was running * * * ", and that Bufkin replied that " * * * he had shot *the* man. (Emphasis added.) A witness testified that " * * * Andrew Carter told

me that Andrew Bufkin told him he didn't get any money in the holdup".

We believe the jury would have been well within its province to find that Carter and Bufkin planned and attempted to perpetrate an armed robbery, during which attempt the deceased was killed. Thus we are convinced that the proofs would have sustained a verdict of guilty as to Carter of murder in the first degree. For whatever reason, the jury, as to defendant Carter, also returned a verdict of murder in the second degree. This, says our eminent and respected Chief Judge, mandates the following conclusion:

"Thus the inescapable conclusion of the jury's conviction of both defendants of second-degree murder is that no robbery or attempted robbery was involved in this killing."

With this we respectfully but firmly disagree. That conclusion is no more "inescapable" than that the jurors simply compromised their conflicting views. Hence we must determine whether a "compromise" verdict so called is infirm as a matter of law. We hold it is not. As Mr. Justice Holmes said in the opinion of the Court in *Dunn v United States,* 284 US 390, 394; 52 S Ct 189, 191; 76 L Ed 356, 359 (1932):

"That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."

It may well be that defendant Carter had no foreknowledge that defendant Bufkin would kill the victim in the robbery attempt. This is not the test. Rather, the question is did defendant Carter participate in the legal sense in the attempted

robbery. We think the record amply supports the conclusion that he did. As such he was susceptible of a conviction of murder in the first degree. That the jury found him guilty of murder in the second degree under the instructions which were not erroneous when given does not invalidate the verdict.

We vote to affirm both convictions.

V. J. Brennan, J., concurred.

Lesinski, C. J. *(concurring in part; dissenting in part).* Defendants Andrew Carter and Andrew Bufkin, having been charged with first-degree murder resulting from an attempted robbery, MCLA 750.316; MSA 28.548, were convicted by a jury of second-degree murder, MCLA 750.317; MSA 28.549. Each defendant appeals as of right.

The uncontradicted testimony at the trial indicated that Edward Koc, an insurance agent, was approached by a single armed assailant who shot and killed him. The assailant escaped in a car driven by another party who was waiting nearby. The people's theory upon which they tried the case was that the killing had resulted from an attempted robbery in which Andrew Carter had driven the car and Andrew Bufkin had done the actual shooting. The trial judge charged:

"Now, if you find that the facts as you have heard them, the testimony indicates to you that there was an attempt to commit a robbery then, I say that you are limited to first-degree murder. As to both or either of the defendants. However, if you find otherwise, then you may consider the lesser included crimes of murder in the second degree and manslaughter."

At the conclusion of his charge, the judge reiterated this statement and in addition stated:

"Now, before the driver of the car, or alleged accessory in this case can be found guilty of murder in the first degree, you must be convinced beyond a reasonable doubt that he intended to participate in a robbery of the deceased, Edward Koc."

When the jury returned asking that the instructions be repeated, the judge again stated:

"[I]f you find from the facts that no robbery was committed only then may you consider second-degree murder or manslaughter and not guilty. Those are the four verdicts you can arrive at, first-degree murder, second-degree murder, manslaughter and not guilty and you may find for either or both of the defendants. This is what you're limited to, is that correct?"

Thus the inescapable conclusion of the jury's conviction of both defendants of second-degree murder is that no robbery or attempted robbery was involved in this killing.

After the verdict of second-degree murder was returned, defendant Andrew Carter immediately moved for a judgment of acquittal notwithstanding the verdict alleging insufficient evidence in support of such a verdict. The trial court denied defendant's motion.

The evidence at trial overwhelmingly supports the theory that defendant Carter was driving the car and that defendant Bufkin did the shooting. Witnesses Linda Whiting, Anita Edwards and Carl Lilly all testified that they were passengers in the car driven by defendant Carter which stopped and picked up defendant Bufkin, who was carrying a brown paper bag. After traveling a few blocks along Northfield, Bufkin asked Carter to stop the car and wait for him for a few minutes. Bufkin left the car and walked south on Northfield toward Oregon. Carter and his passengers waited several minutes and when Bufkin did not return, Carter

apparently became impatient and started to drive away. At that time Bufkin reappeared and defendant Carter stopped the car in order to pick him up. Defendant Bufkin entered the car carrying a paper bag. Upon entering the car he told the others he had shot a man. One witness testified that defendant Bufkin said at that time that he had wanted to rob the deceased but that when the deceased refused to open the trunk of his car defendant Bufkin had shot him. J. C. Clark testified that defendant Bufkin told him he had shot a man and needed money to get out of town.

Of all the witnesses presented at trial, only one, Monwella Harvey, contradicted the evidence that defendant Carter was driving and defendant Bufkin did the shooting. She stated that she saw defendant Carter get out of a car driven by defendant Bufkin, in which only the two of them were riding. She then stated she saw defendant Carter shoot the deceased. Thus defendant Carter's involvement in this crime is predicated solely on the truthfulness of the testimony of witness Monwella Harvey.

While normally it is held that the inconsistencies in the testimony of the witnesses presents a matter of credibility for the jury to determine and evaluate, this Court has stated a jury may not rely on the testimony of a witness who is "completely impeached". *People v White,* 31 Mich App 80 (1971). Monwella Harvey was such a witness. Her testimony not only contradicted the testimony of all other material witnesses, her testimony, if believed, also completely negated the prosecution's theory of Carter's guilt. Miss Harvey's testimony was nothing short of incredible. Having stated that she knew both defendants by sight, she nevertheless admitted on cross-examination that prior to

implicating Carter and Bufkin she had on separate
occasions deliberately identified three other men
as the murderers. She admitted that she had
deliberately identified these men in lineups and in
statements to the police because she was trying to
"get even" with them. In addition, details of her
version of the crime were contradicted by every
other witness including Leola Kelly and Carolyn
White, who were not occupants of the car and
were not acquainted with either of the defendants.
There was, therefore, no competent evidence intro-
duced at trial which would in any way contradict
the massive amount of testimony which indicated
that defendant Carter was only the driver and
that defendant Bufkin did the actual shooting.

In a criminal proceeding the people must prove
every element of the crime charged by direct or
circumstantial evidence beyond a reasonable
doubt. *People v Spann,* 3 Mich App 444 (1966). To
constitute murder in the second degree, there
must be an unlawful killing and a purpose to kill,
preceding and accompanying the act, but without
the deliberation and premeditation which distin-
guishes murder in the first degree. 3 Gillespie,
Michigan Criminal Law & Procedure (2d Ed),
Homicide, § 1639, p 1973. In *People v McKeller,* 30
Mich App 135 (1971), we stated that the malice
necessary for second-degree murder may be infer-
red from the type of weapon used and the manner
in which the crime was committed. However, this
inference goes no further than to supply the requi-
site intent of the actual killer and those engaged
in a common design with him. As we stated in
*People v Cunningham,* 20 Mich App 699, 702
(1969), "It is the duty of courts to reverse criminal
convictions based upon an inference upon an infer-
ence".

In *People v Casper,* 25 Mich App 1, 5 (1970), this Court quoted *People v Burrel,* 253 Mich 321, 323 (1931), as follows:

" 'Mere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abettor or a principal in the second degree nor is mere mental approval, sufficient, nor passive acquiescence or consent.' "

In *People v Walker,* 40 Mich App 142 (1972), we stated that in order to support a conviction for aiding and abetting there must be evidence of a common intent and concert of action.

There was no competent evidence presented at trial which would indicate that defendant Carter did the shooting. Nor was there any evidence produced which would indicate that Carter had any common design with defendant Bufkin other than the hypothesized robbery which the jury expressly rejected in its verdict of second-degree murder. As the prosecutor himself stated in his brief, "If there was no robbery or attempted robbery, then only the shooter could be convicted". Accordingly, the trial court should have granted defendant Carter's motion for acquittal notwithstanding the verdict.

As to defendant Bufkin, he also had had his motion for a judgment of acquittal notwithstanding the verdict denied by the trial court. Our extensive review of the record indicates that there was sufficient evidence to convict him of second-degree murder. Where no request to charge on the lesser offense has been made but evidence exists to support a conviction of the lesser offense, the trial judge may, *sua sponte,* instruct on the lesser offense. *People v Miller,* 28 Mich App 161 (1970).

Thus, the trial judge correctly charged the jury as to second-degree murder in regard to defendant Bufkin. Nor did defendant Bufkin object to the instruction as given. This Court has repeatedly held that a defendant's failure to make a timely objection to a jury instruction waives any possible right he might have to object on appeal absent manifest injustice. *People v Terrell,* 38 Mich App 162 (1972). A careful examination of the record indicates no such injustice resulted to Andrew Bufkin from the instructions given to the jury.

As to defendant Andrew Bufkin, I would affirm with the majority; however, I would reverse as to defendant Andrew Carter and order his discharge.