PEOPLE v RODGERS

1. WITNESSES—IMPEACHMENT—INCONSISTENT STATEMENT—MEMORANDUM—EVIDENCE—HEARSAY—EXTRAJUDICIAL STATEMENT.

Reading a written memorandum to the jury, which constituted its admission in evidence in a criminal case, was error where the memorandum was prepared by a detective out of court and not signed by a witness, whose testimony was sought to be impeached by showing that he had made a prior inconsistent statement to the detective; the writing was hearsay and it was an extrajudicial statement by the detective offered to prove the truth of the thing said, that the witness had spoken the words imputed to him.

2. WITNESSES—IMPEACHMENT—EVIDENCE—MEMORANDUM—REFRESHING MEMORY.

A detective could have related his conversation with a witness, whose testimony was sought to be impeached by showing that he had made a prior inconsistent statement, by testifying verbally; if he could not recall the conversation, he could have been shown his memorandum of the conversation to refresh his memory; if he could not then testify without the aid of the memorandum, the written memorandum might then have been introduced in evidence and read to the jury provided a proper foundation was laid.

3. WITNESSES—IMPEACHMENT—CREDIBILITY—INCONSISTENT STATEMENT.

The people were entitled to impeach the credibility of a witness who testified in support of a defendant's alibi by showing that the witness told a different story to a detective than the one he related at the trial.

REFERENCES FOR POINTS IN HEADNOTES

[1–8] 58 Am Jur, Witnesses § 771 *et seq.*

Admissibility, for purpose of supporting impeached witness, of prior statements by him consistent with his testimony, 75 ALR2d 909.

[9, 10] 58 Am Jur, Witnesses § 584 *et seq.*

Refreshment of recollection by use of memoranda or other writings, 125 ALR 19, s. 82 ALR2d 473.

[11] 29 Am Jur 2d, Evidence § 251 *et seq.*

4. WITNESSES—EVIDENCE—HEARSAY—PAST RECOLLECTION RECORDED.

Trial judge erred in ruling that a detective could read a statement to the jury under the exception to the hearsay rule for past recollection recorded where, over the objection of defendant's lawyer, the judge allowed the detective to read the statement he wrote out at the time of his conversation with an alibi witness and that witness had refused to sign the statement.

5. WITNESSES—IMPEACHMENT—CREDIBILITY—EVIDENCE—HEARSAY—INCONSISTENT STATEMENT.

A prior inconsistent statement of a witness, admissible to impeach his credibility, is not regarded as admissible as an exception to the hearsay rule; it is admissible on the tenet that it is not hearsay because it is not offered as substantive evidence to prove the truth of the statement attributed to the witness but to prove that he said it.

6. WITNESSES—IMPEACHMENT—MEMORANDUM.

An out-of-court written memorandum of an oral statement allegedly made by a witness to be impeached may be used to prove the fact that the statement was made only if that fact—the fact that the witness made the statement—is provable by means of such a memorandum.

7. WITNESSES—INCONSISTENT STATEMENT—CREDIBILITY—IMPEACHMENT—EVIDENCE—MEMORANDUM—HEARSAY.

An inconsistent statement, when admissible to impeach credibility, is not hearsay; however, the written memorandum of the statement, unsigned by the witness being impeached, is hearsay and, therefore, admissible, if at all, only under an exception to the hearsay rule.

8. WITNESSES—EVIDENCE—MEMORANDUM—HEARSAY—IMPEACHMENT—CREDIBILITY.

A written memorandum of an oral statement made by another person, not signed by the other person, is an out-of-court statement made by the writer that the other said what is contained in the writing and the writing itself is hearsay without regard to whether the statement recorded in it is offered as substantive evidence or solely to impeach credibility.

9. WITNESSES—EVIDENCE—MEMORANDUM—REFRESHING MEMORY—PRESENT RECOLLECTION REFRESHED.

A witness who does not have a present recollection of the facts may refer to a written memorandum and if the memorandum refreshes his recollection, his testimony is what he says and not

the writing; accordingly, a party who uses a memorandum to refresh the memory of a witness may not introduce it in evidence or have it read to the jury.

10. WITNESSES—EVIDENCE—REFRESHING MEMORY—PAST RECOLLECTION RECORDED.

A witness when he testifies based on past recollection recorded it is the writing, not refreshed recollection, that is the evidence.

11. CRIMINAL LAW—EVIDENCE—TESTIMONY—HARMLESS ERROR—QUESTION OF FACT.

Admission of inadmissible testimony could not properly be said to be harmless where there was a close question for resolution by the trier of fact in a criminal case.

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and R. B. Burns and Levin, JJ., affirming Wayne, James L. Ryan, J. Submitted September 5, 1972. (No. 4 September Term 1972, Docket No. 53,729.) Decided October 31, 1972.

36 Mich App 211 reversed.

Larry D. Rodgers was convicted of armed robbery. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Samuel A. Turner,* for defendant on appeal.

T. E. BRENNAN, J. This case deals with the admissibility in evidence of a written memorandum.

Defendant on trial for armed robbery interposed the defense of alibi. The prosecution sought to

impeach one of the alibi witnesses by showing that the witness had made a prior inconsistent statement to one Taylor, a detective.

During the cross-examination of the alibi witness, one King, a foundation for the admission of the prior inconsistent statement was laid—that is to say King was asked if he had made the prior statement, and he denied having made it.

The making of the prior inconsistent statement being put in issue, Taylor was called to establish that the prior inconsistent statement was made.

The following then occurred:

"*Q.* Can you tell me what Mr. King told you that evening relating to the facts in this case?

"*A.* Mr. King related to me—

"*Mr. Sherman [counsel for defendant]:* That would be hearsay, Your Honor. I would object. It is out of the presence of the Defendant.

"*The Court:* What purpose is it on?

"*Mr. Bianco [assistant prosecuting attorney]:* Impeachment, Your Honor.

"*The Court:* The objection is overruled.

"*Mr. Bianco:* Thank you.

"*Q.* (By Mr. Bianco) Did you take a written statement from Mr. King?

"*A.* I wrote it down and Mr. King was talking.

"*Q.* As Mr. King was talking to you, you wrote it down?

"*A.* Yes, exactly word for word what he said.

"*Q.* All right, I'm going to show you a piece of paper and ask you if you can identify that.

"*A.* Yes.

"*Q.* All right, can you tell me what it represents to you?

"*A.* That is a statement of Mr. King given to me by him.

"*Q.* All right, *will you read that to the jury?*

"*Mr. Sherman:* Well, I'd like to see that. I think I am entitled.

"*Mr. Bianco:* Don't talk to me about it.

"*The Court:* All right, Mr. Sherman.

"*Mr. Sherman:* Thank you, Your Honor. May I have the voir dire as to this, Your Honor?

"*The Court:* Yes.

"EXAMINATION BY MR. SHERMAN:

"*Q.* Now, Detective Taylor, when was the first time you talked to Sam King?

"*The Court:* Use a lectern while you're questioning the witness.

"*Q.* (By Mr. Sherman) When was the first time you talked to Sam King about this case?

"*A.* The very first time I talked to him?

"*Q.* Yes.

"*A.* Back the night of the armed robbery.

"*Q.* The night of the armed robbery? Did you take a statement from him then?

"*A.* No, I didn't.

"*Q.* You did not? When was the next occasion that you talked to him?

"*The Court:* Now, Mr. Sherman, that isn't voir dire. If you want to voir dire the witness as to the use of this document, that's not so.

"*Mr. Sherman:* Well, Your Honor, his statement was, as I recall, that he interviewed—the first time he interviewed Sam King was on the 13th of June or the 16th of June.

"*Mr. Bianco:* He said the 14th of June. He didn't say it was the first time, he said it was when he took this statement.

"*Mr. Sherman:* I wanted to find out whether he has taken other statements.

"*The Court:* That would be the subject of cross examination.

"*Q.* (By Mr. Sherman) Where was this statement taken?

"*A.* This statement was taken at 2249 South Electric in the City of Detroit.

"*Q.* And had you acknowledged ever taking a statement from Mr. King to me before?

"*A.* I don't recall.

"*Q.* Did Mr. King sign that statement?

"*A.* No sir.

"*Q.* And whose handwriting is that statement in?

"*A.* This is my handwriting.

"*Q.* Did you ask Mr. King to sign that statement?

"*A.* Yes, sir, I did.

"*Q.* And he refused?

"*A.* Yes, sir.

"*Mr. Sherman:* I have nothing further but I object to the use of that statement.

"*The Court:* On what grounds?

"*Mr. Sherman:* On the grounds that the statement is solely hearsay given out of the presence of the Defendant, unsigned, uncooperative in any respect.

"*The Court:* It isn't offered in evidence.

"*Mr. Sherman:* Well, it is being offered by impeachment, Your Honor, and there is no basis for the admission of this statement.

"*The Court:* It isn't offered.

"*Mr. Sherman:* Well, he is asking him to read it.

"*The Court:* That's present recollection, the classic case of present recollection.

"Go ahead.

"*Mr. Bianco:* Thank you, Your Honor.

"*The Witness:* This is the statement of Samuel King taken by Detective Charles Taylor at 2249 South Electric, Detroit, Michigan. Time: 1:30 A.M. Saturday, June 14, 1969: 'I went to the game that night. I saw Larry there but it wasn't until after the game. Anyway, the game was over I don't know what time it was but Larry did not go to the Castle with me. We were parked in the Castle parking lot. Larry might have come over sometime during the time he was at the Castle and got in my car and got right back out but he didn't go to the Castle with me. They told me to say that he was with me but I told them I wasn't going to lie for them and I didn't want to get involved.'

"That is what he told me.

"*Mr. Bianco:* You realize you're still under oath?

"*The Witness:* Yes, sir.

"*Mr. Bianco:* And that's what he told you?

"*The Witness:* Yes, sir." (Emphasis added.)


The written memorandum was read to the jury. This constituted its admission in evidence. This was error. The writing was prepared by the Detective Taylor, out of court and was not signed by the witness King. The writing was hearsay. It was an extrajudicial statement (by Taylor) offered to prove the truth of the thing said (that King had spoken the words imputed to him).

There was nothing to prevent Taylor from testifying verbally. He could have related his conversation with King. If he could not recall the conversation, he could have been shown the memorandum to refresh his memory. If he could not then testify without the aid of the memorandum, the written memorandum might then have been introduced in evidence and read to the jury provided a proper foundation was laid. *Jaxon v City of Detroit, Department of Street Railways,* 379 Mich 405, 413 (1967).

Under the circumstances here, the writing was inadmissible. The dissenting opinion of Judge LEVIN in the Court of Appeals contains an exhaustive analysis. We adopt it.

Reversed and remanded for new trial.


T. M. KAVANAGH, C. J., and ADAMS, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.


BLACK, J., did not sit in this case.