PEOPLE v LIVINGSTON

1. APPEAL AND ERROR—CONFESSIONS—WALKER HEARING—VOLUNTARI-
   NESS—CLEAR ERROR.

   The finding of a trial judge, after a *Walker* hearing, that a
   confession had been voluntarily made must be affirmed unless
   it is determined to be clearly erroneous after an examination of
   the entire record.

2. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—CONSTITUTIONAL
   RIGHTS—PURPOSE OF INTERROGATION—COERCION—DELAY.

   A finding that a confession obtained after 90 minutes of interro-
   gation was voluntarily given was proper where the defendant
   had been advised of his rights, the interrogation was not
   designed to extract a confession but was employed to determine
   whether a complaint should be filed or whether the defendant
   should be released from custody, the defendant freely and
   voluntarily supplied the information, there was no evidence of
   coercion, and a delay between arrest and arraignment was not
   used for the purpose of extracting the confession.

3. APPEAL AND ERROR—CRIMINAL LAW—EVIDENCE—MISCARRIAGE OF
   JUSTICE—STATUTES.

   Decisions of a trial judge in evidentiary matters are accepted on
   appeal unless it affirmatively appears that the error com-

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 440, 441.
[2, 4] 29 Am Jur 2d, Evidence §§ 523-596.
[3] 5 Am Jur 2d, Appeal and Error §§ 782, 783.
[5] 21 Am Jur 2d, Criminal Law §§ 50-52.
[6] 21 Am Jur 2d, Criminal Law § 48.
   Validity and construction of statutes providing for psychiatric
   examination of accused to determine mental condition. 32 ALR2d
   434.
[7] 40 Am Jur 2d, Homicide § 72.
[8] 20 Am Jur 2d, Courts § 54.
   Power and duty of court to keep its files and records free from
   scandalous matter. 111 ALR 879.
[9-11] 21 Am Jur 2d, Criminal Law §§ 62-74.

plained of has resulted in a miscarriage of justice (MCLA 769.26).

4. CRIMINAL LAW—EVIDENCE—CONFESSIONS—MEMORANDUM OF CONFESSION—OBJECTIONS—OPPORTUNITY TO CROSS-EXAMINE—HEARSAY—ADMISSIONS.

   Admission into evidence of a defendant's confession by a police officer who read from a written memorandum he had made of the confession instead of testifying to his recollection of the confession was proper where no objection was made and defense counsel had the opportunity to cross-examine the officer who had made the memorandum; the memorandum, which was signed by the defendant, was admissible as an admission of a party, if it is deemed to be hearsay.

5. CRIMINAL LAW—INSANITY—PRESUMPTION OF SANITY—BURDEN OF PROOF—REASONABLE DOUBT—PROSECUTOR'S DUTY.

   A defendant must introduce sufficient evidence to rebut the presumption of sanity before he is allowed to present an insanity defense to a jury; once the presumption is rebutted, the burden of proving sanity beyond a reasonable doubt becomes a duty of the prosecutor.

6. CRIMINAL LAW—INSANITY—TEST—ELEMENTS.

   The two elements of the test for insanity are: (1) whether the defendant knew right from wrong; and (2) whether defendant had the willpower to resist doing the wrongful act if he did know right from wrong.

7. HOMICIDE—FELONY MURDER—INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

   A charge of lesser included homicide offenses is never proper when felony murder is the only offense involved.

8. APPEAL AND ERROR—LOWER COURT RECORD—DETROIT RECORDER'S COURT—COURT CLERK—WORK SHEET—COURT RULES.

   A work sheet for the clerk of the Recorder's Court of Detroit is an official part of the lower court record, part of the record on appeal, and a proper source to show that a jury had been sworn (GCR 1963, 812.1[a]).

9. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—HEARING—EVIDENCE—STATUTES.

   A trial judge shall immediately hear and determine a defendant's competence to stand trial where the defendant's competence has been questioned and he has been examined at a center of forensic psychiatry pursuant to statute; it must affirmatively

appear on the record that: the parties were expressly made aware that a competency hearing was being held, that they had a right to present evidence, and that failure or refusal to exercise that right would result in a determination of competency based exclusively on the report of the forensic psychiatry center, that the trial judge announced the commencement of a formal, evidentiary hearing into the question of competency, and that all the parties were afforded adequate opportunity to study the report of the center of forensic psychiatry, consult the examining psychiatrist, and otherwise prepare for the presentation of evidence at the hearing.

10. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—FORENSIC PSYCHIATRY CENTER—EVIDENCE.

The report of a forensic psychiatry center may be the sole basis for a determination of competency only if neither the people nor the defendant choose to introduce evidence at the competency hearing.

11. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—HEARING—WAIVER—EVIDENCE.

The right to a competency hearing conducted in accordance with the demands of the statute cannot be waived either by the defendant or his lawyer; the right to present evidence at a competency hearing may be waived.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 October 11, 1974, at Detroit. (Docket No. 17887.) Decided January 27, 1975. Leave to appeal applied for.

Tyrone P. Livingston was convicted of felony murder. Defendant appeals. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Brian Marzec,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: DANHOF, P. J., and BRONSON and O'HARA,* JJ.

BRONSON, J. Defendant-appellant, Tyrone Livingston, was found guilty by jury verdict on May 29, 1973 of felony murder, MCLA 750.316; MSA 28.548. On June 12, 1973 he was sentenced to a term of life imprisonment. He appeals by right, and alleges numerous grounds for reversal of his conviction.

Defendant first argues that the trial judge erred in finding that a confession obtained by the police and introduced at trial was voluntarily given. An extensive *Walker*[1] hearing was held on May 21, 1973. The trial judge concluded that the confession had been voluntarily made. That finding must be affirmed unless, after an examination of the entire record, it is determined to be clearly erroneous. *People v Douglas*, 50 Mich App 372, 376; 213 NW2d 291 (1973). There is ample evidence to support the finding that the statement was voluntary.

At the time of defendant's arrest, at about noon on November 1, 1972, the arresting officer began to read the defendant his rights but the defendant interrupted and said that he knew his rights. No questions were asked at that time.

The defendant was then taken to police headquarters and formally advised of his rights, signing a form indicating that he had been so advised. He indicated that he could read and write and did in fact sign his name, the date, and the time on the printed form.

The defendant was sober and was not struck or touched by the officers. The defendant confessed

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

the murder, which was reduced to writing. The defendant signed all the pages in the confession and on the last page wrote, "I have read all three pages. It is the truth".

The defendant, on cross-examination at the *Walker* hearing, demonstrated that he could read the printed forms with ease. The court took notice of this fact and the defendant's excellent command of the English language.

After giving the confession, the defendant indicated that he wanted to call his brother and was allowed to do so. At the time the written statement was about to be taken, the defendant indicated that he was hungry. Food was promptly provided.

Defendant makes much of the fact that he was taken into custody on November 1, 1972 and not arraigned on a warrant until November 2, 1972. However, delay between arrest and arraignment will invalidate a confession only if the delay has been employed as a tool to extract a confession. *People v White,* 392 Mich 404; 221 NW2d 357 (1974); *People v Gwinn,* 47 Mich App 134; 209 NW2d 297 (1973).

The confession here was obtained at about 3:30 p.m. on November 1, 1972 after approximately 90 minutes of interrogation. This interrogation was not designed to extract a confession. The police were obliged to determine whether a complaint should be filed or rather whether defendant should be released from custody. After proper warnings had been given, defendant freely and voluntarily supplied the information needed to justify issuance of a warrant. There is no evidence of coercion. The three-and-one-half-hour delay from the time of arrest does not run afoul of either statute[2] or case

_____

[2] MCLA 764.26; MSA 28.885.

law. The further delay, from 3:30 p.m. on November 1, 1972—after the confession had been given—until arraignment the next day does not render the confession inadmissible, because such delay could not possibly have been for the purpose of extracting a confession already obtained. The confession was properly admitted into evidence at trial.

Defendant next maintains that the trial judge erred reversibly in allowing a police officer to read into evidence defendant's confession, which had been reduced to writing by the officer, instead of requiring the officer to testify to his recollection of it.

We note initially the absence in the record of any objection by defendant at trial to the admission of this evidence. Furthermore, we must accept the decision of the trial judge in evidentiary matters unless it "affirmatively appear[s] that the error complained of has resulted in a miscarriage of justice". MCLA 769.26; MSA 28.1096.

Defendant relies on *People v Rodgers,* 388 Mich 513; 201 NW2d 621 (1972), in support of his claim. In *Rodgers* the Supreme Court condemned the reading of a written memorandum by a police officer in lieu of his verbal testimony. In that case the writing was introduced to impeach the credibility of a different witness. The Court there held that the writing was inadmissible hearsay, since it constituted an out-of-court statement by the officer offered to prove that the other witness had spoken the words imputed to him. See *People v Rodgers, supra,* at 519.

The instant case presents a very different situation. Here, while the writing did record the statement of the defendant, it was offered as substantive proof of guilt, rather than for impeachment

purposes. It was the truth of the words themselves
—not simply the fact that defendant uttered them
—which was at issue. If hearsay at all, it was
admissible as the admission of a party.[3] Further-
more, the defendant acknowledged the truth and
accuracy of the recorded confession by signing
each page, a factor noticeably absent in *Rodgers.*
See *People v Rodgers, supra,* at 519.

The prosecutor should have laid a foundation for
the reading of the memorandum by first using it to
refresh the officer's memory and, failing that, by
reading it to the jury, provided appropriate condi-
tions were met.[4] In the instant case, given the
absence of an objection and the opportunity for
defense counsel to vigorously cross-examine the
officer who prepared the memorandum,[5] we refuse
to find fault with the trial judge's decision to allow
the officer to read the memorandum into evidence.

Defendant's next assertion of error concerns the
trial judge's refusal to allow the jury to consider
his insanity defense. The trial judge found that the
presumption of sanity had not been overcome and
for that reason denied the request to instruct on
insanity.

A defendant is presumptively sane. In order for
a defendant to be allowed to get to a jury on an
insanity defense, he must introduce sufficient evi-
dence to rebut the presumption of sanity. Once
that is accomplished, the burden of proving sanity
beyond a reasonable doubt becomes a prosecutorial
duty. See *People v Krugman,* 377 Mich 559; 141
NW2d 33 (1966).

All of the evidence introduced in this case on

---

[3] There was apparently no hearsay exception available in *Rodgers.*

[4] *See Jaxon v Detroit Department of Street Railways,* 379 Mich 405,
413; 151 NW2d 813 (1967).

[5] *See People v Rea,* 38 Mich App 141, 142; 195 NW2d 809 (1972).

the question of defendant's sanity supported the conclusion that defendant was legally sane at the time of the offense. All of the psychiatric testimony, including that of Dr. Bruce Danto, called by defendant,[6] indisputably established that (1) defendant knew right from wrong, and (2) defendant did have the willpower to resist doing the wrongful act. The two elements of the Michigan test[7] for insanity were both met head-on by the expert testimony and defendant failed to satisfy the test on either count. In fact, defendant's own witness, Dr. Danto, concluded that, in his opinion, defendant was legally sane at the time of the incident.[8]

While we are aware that the jury is the "ultimate trier of the fact of criminal insanity", *People v Martin,* 386 Mich 407, 422; 192 NW2d 215 (1971); one must do more than merely assert an insanity defense to become entitled to such a jury determination. The jury cannot be allowed to rely on mere speculation or conjecture. See *People v Henry,* 32 Mich App 254; 188 NW2d 202 (1971); *Kregger v Bannan,* 170 F Supp 845 (ED Mich, 1959) (applying Michigan law); *State v Roy,* 40 NM 397; 60 P2d 646; 110 ALR 1, 6–8 (1936). We conclude that the trial judge did not err in refusing to give an instruction on the defense of insanity.

The next alleged error involves the trial judge's refusal to honor defendant's request that the jury be instructed on the offenses of second-degree murder and manslaughter. Since defendant was

---

[6] Dr. Danto also examined defendant for purposes of determining competency. Though *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971), condemns the practice of allowing the psychiatrist who conducted a competency examination to testify concerning insanity, the protection provided by *Martin* was here expressly rejected by defendant who chose to use Dr. Danto as his witness.

[7] *See People v Martin,* 386 Mich 407, 419, fn 5.

[8] Such conclusory testimony is entirely proper under GCR 1963, 605.

charged only with *felony* murder, establishing that a murder had occurred, with its corresponding intent requirement, was not an element of the people's case. Rather, only the killing of a human being in the perpetration or attempted perpetration of a felony had to be shown, with the necessary intent presumed by the statute.[9] Accordingly, no lesser included homicide offenses are ever properly chargeable when felony murder is the only offense involved. See *People v Bufkin,* 43 Mich App 585; 204 NW2d 762 (1972), *aff'd on rehearing,* 48 Mich App 290; 210 NW2d 390 (1973); *People v Graves,* 52 Mich App 326; 217 NW2d 78 (1974). The request for an instruction on lesser included offenses was rightly denied.

Defendant also maintains that the jury which convicted him was never properly sworn. Though the transcript does not indicate that the jury was ever sworn, the work sheet for the clerk of the Recorder's Court dated May 22, 1973, an official part of the lower court file, states that the jury was indeed sworn on that date. That entry is part of the record on appeal. GCR 1963, 812.1(a). The record therefore clearly demonstrates that the jury was ·properly sworn, and defendant's contention to the contrary is without merit.

The final allegation of error relates to the failure of the trial judge to conduct a competency hearing upon defendant's return from the forensic psychiatry center as required by MCLA 767.27a; MSA 28.966(11).

On March 16, 1973 defense counsel, defendant,

---

[9] *People v Carter,* 387 Mich 397, 418, 422; 197 NW2d 57, (1972); *People v DeMeerleer,* 313 Mich 548, 555; 21 NW2d 849 (1946), *rev'd on other grounds,* 329 US 663; 67 S Ct 596; 91 L Ed 584 (1947); *People v Crandell,* 270 Mich 124, 126; 258 NW 224 (1935); *People v Utter,* 217 Mich 74, 85–89; 185 NW 830 (1921); *People v Gavin,* 37 Mich App 335, 337; 194 NW2d 498 (1971); *People v Goree,* 30 Mich App 490, 494–495; 186 NW2d 872 (1971).

and the prosecutor appeared before the trial judge. All were familiar with the report from the forensic center. The following exchange occurred:

"*The Court:* And it indicates that it is felt on the basis of the examination of the forensic center that the defendant is competent to stand trial to the extent that he understands the nature and the object of the proceedings and his position in relation thereto; and that he is able to advise counsel in his defense.

"*Mr. Talbot [defense counsel]:* Your Honor, I agreed first of all to stipulate that if a physician representative of the center were to be present, they would so testify. And we will stipulate to not having him brought in this morning. And we would not argue their findings at this time.

"*The Court:* Now, with regard to the matter of a trial date."

We are constrained to conclude that this very brief reference to the report by the trial judge did not serve to adequately discharge her duty to "immediately *hear* and *determine* the issue of competence to stand trial". MCLA 767.27a; MSA 28.966(11). (Emphasis supplied.)

Though the trial judge may base her judicial determination of competency solely on the forensic center report, *People v Chase,* 38 Mich App 417, 421; 196 NW2d 824 (1972), such a procedure is permissible only if neither the people nor defendant choose to introduce evidence. An opportunity for a formal hearing must be furnished by the trial judge before the forensic center report can become the exclusive determinant of competency. *People v Chase, supra, People v Lucas,* 47 Mich App 385, 390; 209 NW2d 436 (1973).

It is not enough for the trial judge to intimate that defendant's competency is being considered, offering *sub silentio* the chance for counsel to

present evidence. The trial judge must announce, on the record, the commencement of a formal, evidentiary hearing into the question of competency. All parties must be afforded adequate opportunity to study the forensic center report, consult the examining psychiatrist, and otherwise prepare for the presentation of evidence at the hearing. If, at such a hearing, counsel for either side wish to rely exclusively on the forensic center report and waive the right to introduce testimony, that desire can then safely be acknowledged and satisfied by the trial judge. The parties must be expressly made aware that a competency hearing pursuant to MCLA 767.27a; MSA 28.966(11) is being held, that they have a right to present evidence, and that failure or refusal to exercise that right will result in a determination of competency based exclusively on the forensic center report. All this must affirmatively appear on the record.

No formal hearing into competency was ever conducted in this case. The people, however, ask us to consider defense counsel's "stipulation" not to contest the findings in the report as a waiver, eliminating the need to obey the statutory mandate. Even if we were to conclude that defense counsel's agreement to refrain from challenging the findings "at this time" constituted a waiver, we have repeatedly held that the right to have a competency hearing, conducted in accordance with the demands of the statute, cannot be waived either by defendant or his lawyer.[10] *People v Lucas, supra,* at 389, *People v Anderson,* 53 Mich App 60; 218 NW2d 412 (1974).

In view of the trial judge's failure to conduct a

---

[10] Lest we be misunderstood, we emphasize the distinction between a waiver of the right to present evidence at a competency hearing and a waiver of the right to the hearing itself. We are prepared to recognize the former, but forbid the latter.

competency hearing, we follow the remedy adopted in *People v Lucas, supra,* and *People v Thompson,* 52 Mich App 262, 267–268; 217 NW2d 63 (1974). We remand for a competency hearing, to be held in accordance with the procedure outlined above. If the defendant is found to have been competent to stand trial at the time of his May, 1973 trial, then his conviction is affirmed. However, if the defendant is found to have been incompetent to stand trial at that time, or if the court is unable to adequately determine his competency to stand trial at the time of his trial, his conviction shall be set aside and a new trial granted.

Remanded for further proceedings not inconsistent with this opinion.

O'HARA, J., concurred.

DANHOF, J., concurred in the result only.