STATE OF CONNECTICUT *v.* MELICO BUTLER
(13140)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued March 9—decision relased May 31, 1988

*Louis S. Avitabile,* special public defender, with whom, on the brief, was *Denise Dishongh,* special public defender, for the appellant (defendant).

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, was *Peter Markle,* assistant state's attorney, for the appellee (state).

HULL, J. The defendant, Melico Butler, was charged with the crimes of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2),[1] and of being a persistent dangerous felony offender in violation of General Statutes § 53a-40.[2] After a jury trial, the defendant was found guilty of the robbery charge and

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE . . . . (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon."

[2] "[General Statutes] Sec. 53a-40. PERSISTENT OFFENDERS: DEFINITIONS; DEFENSE; AUTHORIZED SENTENCES. (a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes: (A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder; or (B) prior

pleaded guilty to the charge of being a persistent dangerous felony offender. He appeals the judgment of conviction.

On appeal, the defendant claims that the trial court erred (1) in admitting into evidence, for purposes of impeaching the credibility of a defense witness, a typewritten but unsigned out-of-court statement made by the witness, (2) in charging the jury on its use of the statement, (3) in lowering the state's burden of proof on an element of the crime, by virtue of its charge to the jury on the statement, (4) in failing to instruct the jury on the degree of certitude necessary to arrive at a verdict of guilty, and (5) in instructing the jury on the state's burden of proof beyond a reasonable doubt. We find no error.

The jury could reasonably have found the following facts. On February 18, 1986, at approximately 8 p.m., two men committed a robbery at the Brewster Pharmacy in Waterbury. One of the men was wearing a brown, three quarter length coat and a green ski mask, and he was carrying a rifle. The other man was Anthony Nichols. After they had collected the money from the cash registers, the robbers fled the scene. A witness who saw the men running from the pharmacy flagged down a police cruiser and told the police officer the direction in which they had gone. The police officer followed the trail of the suspects to the backyard at 101 Division Street in Waterbury where he was

to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2)."

joined by other police officers who had arrived in response to a report of a possible break-in. There they arrested Nichols and the defendant, and seized a coat, ski mask and rifle which they found nearby.[3]

## I

The defendant's first three claims pertain to the admission into evidence of a statement allegedly made by Nichols to a police detective that directly contradicted Nichols' trial testimony. Against the advice of defense counsel and at the defendant's insistence, Nichols was called as a defense witness. He testified that, on the afternoon of February 18, 1986, he had borrowed the defendant's rifle, telling the defendant that he needed it to protect himself from some persons with whom he had had some problems. He stated that, on the evening in question, he and an accomplice committed the robbery; that the accomplice was not the defendant but another person known to Nichols only by his nickname, J.D.L.; and that, following the robbery, he and J.D.L. ran through a number of yards, eventually arriving at a yard where they found the defendant working on his car. Nichols further testified that J.D.L. threw off his coat and continued to run, but Nichols stayed behind, waiting for the defendant to give him a ride. He said the police then arrived and arrested him and the defendant. Nichols asserted that he had not given any statement to the police.

On cross-examination, Nichols admitted that he had spoken to Detective John Maia on the night of the robbery and had told him that he had committed the robbery, but had not named his accomplice. The state then

---

[3] According to the state, the defendant and Nichols were seated on a stairway leading to a porch at 101 Division Street and the clothes and rifle were behind the defendant. The defendant states that Nichols picked up the clothes and gun and placed them on the porch, and that the defendant was in the yard repairing his car.

showed him a two page typewritten and unsigned document, titled "Voluntary Statement," and asked him if he had ever seen it before. Nichols replied that he had. The defendant objected to the use of the statement and the jury was excused. The state said it intended to offer the document as a prior inconsistent statement. Nichols was then asked if he had seen the statement before, to which he replied that he had only that day been shown the document by his lawyer. He said he recalled talking to Maia but asserted that Maia had not typed anything while they talked nor had he read the statement back to Nichols. He further testified that he had not refused to sign a statement. The state withdrew its offer of the statement and apprised the court that it intended to call Maia as a witness. The defendant's objection was sustained. The jury returned and was instructed to disregard the reference to the document as a statement. The statement was marked as an exhibit for identification.

When cross-examination of Nichols resumed, the state again showed him the statement which he maintained he had never seen until that day. He adhered to his testimony that J.D.L., not the defendant, had been his accomplice in the Brewster Pharmacy robbery. He also asserted that Maia had wanted him to implicate the defendant in the robbery but that he had not done so. He repeated that although he had recounted the robbery to Maia, Maia had not, in his presence, typed any statement, nor had he asked Nichols to read a typed statement.

Subsequently, the state called Maia. He testified that, sometime after 3 a.m. of the day following the robbery, after he had advised Nichols of his constitutional rights, he had interviewed him in the cell block at the police department. He said that Nichols had admitted to having committed the robbery, at which point, Maia had brought him to the detective bureau where a typewriter

was available. Maia said he had again advised Nichols of his constitutional rights and had asked Nichols for the details of the robbery. He stated that he had typed Nichols' account of the robbery as it was given by Nichols. The state showed the statement to Maia who acknowledged that it was the statement given by Nichols and typed by Maia; he confirmed that he had made no changes to the statement since he took it down. Maia further testified that upon completion of the statement, he gave it to Nichols who had apparently read it. He said that Nichols had subsequently refused to sign it.

The state then offered the statement as a full exhibit and defense counsel objected on the ground that it was hearsay. The state responded that it offered the statement as a prior inconsistent statement. The court ruled that a prior inconsistent statement, although hearsay, is admissible for the sole purpose of impeaching the credibility of the witness, and advised counsel that it would instruct the jury that use of the statement was limited to impeachment purposes and it could not be used for the substantive purpose of determining the defendant's guilt or innocence. The defendant excepted to the ruling. Maia, thereupon, was permitted to read the statement aloud. The statement described, allegedly in Nichols' own words, how Nichols and the defendant had planned and executed the robbery, directly contradicting Nichols' trial testimony. Immediately thereafter, the court formally charged the jury as promised. Maia testified that Nichols had named only the defendant as his accomplice and had never mentioned anyone called J.D.L. He stated further that, had Nichols mentioned J.D.L., it would have appeared in the statement.

In its charge to the jury at the close of the evidence, the court again cautioned the jury that the statement could be used only to test Nichols' credibility and added

that, because it was not signed, it could be used for this limited purpose only if it found that Nichols had, in fact, adopted the statement. The court cited the harm that could be done by admitting into evidence an unsigned, false statement typed by one person and attributed to another. The court then summarized the testimony of Nichols and Maia. Nichols, the court recollected, completely denied the statement was his own. With respect to Maia's testimony, the court erroneously recalled that Maia had testified that Nichols had acknowledged that the statement was correct and accurate but then refused to sign it. The court concluded this portion of its charge by admonishing the jury that if it did not believe Maia, but believed that Nichols had never adopted the statement, it could not be used for any purpose at all.

## A

The defendant concedes that a prior inconsistent statement of a witness, whether oral or written, is admissible to impeach the credibility of the witness. He principally objects to the form in which the statement was admitted, contending that, because it was neither signed nor adopted by Nichols, it was hearsay, admitted to prove the substantive fact that the statement was made. The state counters that the statement, having been offered for the sole purpose of impeachment, was properly admitted, and the scope of its use was adequately conveyed to the jury by the trial court. We agree with the state.

"It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made out of court or in other proceedings which contradict those made upon direct examination." *State* v. *Saia,* 172 Conn. 37, 45, 372 A.2d 144 (1976); C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed.) § 7.24.3 (a); see also

*G & R Tire Distributors, Inc.* v. *Allstate Ins. Co.,* 177 Conn. 58, 60–61, 411 A.2d 31 (1979). The impeaching statement may be oral; *Branford Trust Co.* v. *Prudential Ins. Co.,* 102 Conn. 481, 485, 129 A. 379 (1925); or written. *Schurgast* v. *Schumann,* 156 Conn. 471, 482, 242 A.2d 695 (1968); see also *State* v. *Rivera,* 200 Conn. 44, 51 n.5, 509 A.2d 505 (1986). Where a party seeks to impeach a witness by using extrinsic evidence, certain standards must be met. The inconsistent statement must be relevant and of such a kind as would affect the witness' credibility, and, generally, a foundation for introducing the statement should be laid at the time of cross-examination of the witness. *State* v. *Saia,* supra, 45–46; C. McCormick, Evidence (3d Ed.) § 37. "In this state, we have no inflexible rule regarding the necessity of calling the attention of a witness on cross-examination to his alleged prior inconsistent statements before either questioning him on the subject or introducing extrinsic evidence tending to impeach him. From early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statements where no foundation has been laid. . . . The trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case." *State* v. *Saia,* supra, 46.

Usually, the foundation for introducing a prior inconsistent statement is laid by asking the witness on cross-examination whether he made the statement and alerting him to the time and place at which it was made. *Adams* v. *Herald Publishing Co.,* 82 Conn. 448, 452–53, 74 A. 755 (1909); *Bradley* v. *Gorham,* 77 Conn. 211, 213, 58 A. 698 (1904). Where the witness denies having made the statement or is unable to recall having done so, extrinsic evidence may be admitted to show it was made. *State* v. *Williams,* 204 Conn. 523, 534–35, 529 A.2d 653 (1987); *G & R Tire Distributors, Inc.* v. *Allstate Ins. Co.,* supra, 61; *State* v. *Saia,* supra.

The foundation for admitting extrinsic evidence of Nichols' prior inconsistent statement was adequately established. Nichols was shown the statement and was apprised of the time and place at which it was allegedly made. Although he admitted to having spoken to Maia, he denied having made the proffered statement, thus establishing the basis upon which to introduce extrinsic evidence to show it had been made.

The defendant argues, however, that the typewritten, unsigned statement was hearsay, relying principally on Judge Levin's dissenting opinion in *People v. Rodgers,* 36 Mich. App. 211, 220–31, 193 N.W.2d 412 (1971), which was adopted by the Michigan Supreme Court when it reversed the decision of the Michigan Court of Appeals. *People v. Rodgers,* 388 Mich. 513, 201 N.W.2d 621 (1972). In *Rodgers,* a police detective, over the objection of the defendant, read a memorandum containing a statement allegedly taken from a defense witness who never signed it. The trial court had admitted the statement under the past recollection recorded exception to the hearsay rule. The Court of Appeals held that it was admissible as a prior inconsistent statement, that a proper foundation had been laid, that it was a question of fact for the finder to determine whether the writing was a verbatim transcription of the witness' statement or the conclusion of the detective, and that the jury had been instructed that its use was limited to impeachment of the witness' credibility. *People v. Rodgers,* 36 Mich. App. 211, 217–20, 193 N.W.2d 412 (1971).

As to the status of the statement as a prior inconsistent statement, the dissent asserted that, while the statement itself was admissible to impeach the witness' credibility, the manner of proving that it had been made resulted in the admission of hearsay. Id., 221. The writing in question opened with the following sentence: " 'This is the statement of Samuel King taken by Detec-

tive Charles Taylor at 2249 South Electric, Detroit, Michigan. Time: 1:30 a.m. Saturday, June 14, 1969.' '' Id., 223. There followed, in quotation marks, the alleged statement of the witness. At the end of the writing appeared the sentence, '' 'This is what he told me.' '' Id. Judge Levin characterized the written memorandum as an out-of-court statement made by the writer that the other person had said what was contained in the writing and thus contained two statements: (1) the written statement of the writer that (2) the other person had made the oral statement attributed to him. Judge Levin further posited that an out-of-court written memorandum of an oral statement allegedly made by the witness may be used to prove the fact that the statement was made only if that fact is provable by means of such a memorandum. Id., 224–25. The Supreme Court of Michigan agreed that the memorandum was an extrajudicial statement by the detective offered to prove the truth of the thing said, that the witness had spoken the words imputed to him, and was therefore hearsay. *People* v. *Rodgers,* 388 Mich. 513, 519, 201 N.W.2d 621 (1972). The defendant urges us to so characterize the writing admitted in this case. We decline to do so.

We are unable to discern any appreciable difference between an evidentiary showing to prove a prior inconsistent oral statement, and that made through Maia's testimony and the admission of the statement, with the exception of the fact that the typed statement itself was admitted. Proof that a prior inconsistent oral statement was made involves testimony that the statement was made and a recitation of its content. Indeed, the defendant concedes that Maia could have testified with respect to prior inconsistent oral statements for the purpose of impeaching Nichols. Whether Maia testified from memory as to the content of the statement or the content of the statement was introduced in an unsigned,

typed writing, it remained a question of fact for the jury to determine whether it was Nichols' statement. This was a question going to the credibility of the witnesses. We, therefore, conclude that the court did not err in admitting the statement.

## B

The defendant's second claim challenges the trial court's instructions to the jury on its use of the prior inconsistent statement on the ground that the instructions were predicated on the erroneous assumption that the statement was admissible and not hearsay. We have resolved the issue of its admissibility in part IA of this opinion and, accordingly, need not address this argument.

The defendant also contends that the trial court's instructions on how the jury was to determine whether it was Nichols' statement were erroneous and misleading. The state points out that the defendant did not file a request to charge on this issue, nor did he take an exception to this part of the charge or request a supplemental instruction, and that, accordingly, the alleged error is not reviewable. The defendant, nonetheless, urges us to grant review under *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), which permits review of an unpreserved claim where the record adequately supports a claim that the defendant has been deprived of a fundamental constitutional right and a fair trial. He argues that since the evidence does not support the court's characterization of Maia's testimony as stating that Nichols acknowledged the statement, the jury might have construed the court's comments as telling them how to resolve a disputed issue of fact.

We disagree with the defendant that review of this claim under *Evans* is warranted. The court was careful to explain to the jury that, while the court might comment on the evidence, the jury was in no way bound

by the court's recollection of the evidence, and that the jury's recollection, if it conflicted with the court's, was to control. Further, the court emphasized that the words it used in summarizing Maia's testimony were the court's, not Maia's. We are satisfied that the error complained of, if any, was not significant and was presumptively cured by the court's charge that the jury's recollection of the testimony should control. *State* v. *Reid,* 193 Conn. 646, 664, 480 A.2d 463 (1984). "It must have been apparent to counsel during the charge that the statement was made by mistake. In such cases the attention of the court should be called at the time to the error so as to have it corrected, and when that is not done it will ordinarily be presumed that the jury, whose duty it is to remember the testimony, are not misled by an inadvertence of the court in summing up the testimony." *Sullivan* v. *Nesbit,* 97 Conn. 474, 479, 117 A. 502 (1922) (trial court charged jury that certain claim had not been made when, in fact, it had).

C

The defendant's remaining claims with respect to the charge on the statement are similarly unmeritorious. The defendant asserts that the jury should have been charged that they could believe Maia and still find that Nichols did not adopt the statement because Maia's testimony was insufficient to prove that fact. The defendant made no such request to charge nor did he except to the charge as given or ask for a supplemental charge. We shall, therefore, not consider this claim.

He also contends that the charge diluted the state's burden of disproving beyond a reasonable doubt the defense's evidence of the absence of the defendant at the scene of the crime. Throughout his brief, the defendant characterizes Nichols' testimony as "reverse" or "insider's" alibi evidence and claims that he was entitled to have the jury charged that Maia's testimony, together with other evidence in the case, must be

believed by them beyond a reasonable doubt before Nichols' testimony could be discounted or disregarded. The state counters that Nichols' testimony, although exculpatory, was not alibi evidence because it did not place the defendant at some place other than the Brewster Pharmacy at the time of the robbery.[4]

A defendant asserting an alibi and relying upon it as a defense is entitled to have the jury charged that the evidence offered by him on that subject is to be considered by them in connection with all the rest of the evidence in ascertaining whether he was present, and that if a reasonable doubt on that point exists, it is the jury's duty to acquit him. *State* v. *McKnight,* 191 Conn. 564, 584, 469 A.2d 397 (1983). We need not decide, however, whether the defendant was entitled to this charge since he failed to request it at trial. "[A] trial court has no duty to instruct upon alibi in the absence of a request, and . . . the failure to instruct in such an instance will not ordinarily constitute reversible error, even though substantial alibi evidence may have been introduced by the defense." *State* v. *Parham,* 174 Conn. 500, 510, 391 A.2d 148 (1978). The defendant asserts that the omission of an alibi instruction is reviewable under *Evans.* The court instructed the jury that its deliberations must cease if it found that the state did not prove beyond a reasonable doubt that the defendant was present at the scene of the robbery. The defendant does not claim error in this aspect of the charge. Under such circumstances, the defendant was not deprived of a fundamental constitutional right and a fair trial. Id., 510–11.

## II

The defendant argues that the court impermissibly diluted the state's burden of proving him guilty beyond

---

[4] The state also notes that the defendant failed to file a notice of intent to offer a defense of alibi as required by Practice Book § 763. In light of our disposition of this issue, we need not address the effect of this failure.

a reasonable doubt. He asserts that, in its charge to the jury on reasonable doubt, the court failed to instruct the jury on the degree of certainty necessary to a finding of guilt and prejudiced the defendant by instructing the jury to disregard the standard of moral certainty mentioned by defense counsel in his closing argument. He also claims that the trial court erroneously related the standard of reasonableness to proof of guilt rather than to doubt and acquittal, contrary to the defendant's request to charge. While the defendant, by filing a written request to charge the jury with regard to the second prong of his challenge to the court's charge, preserved it; Practice Book §§ 852, 4185; he did not preserve his claim regarding the court's treatment of the concept of moral certainty. We have previously held, however, that such a claim is reviewable under *State v. Evans,* supra, since the error alleged might infringe upon the defendant's due process rights, thus depriving him of a fair trial. *State* v. *Simms,* 201 Conn. 395, 415, 518 A.2d 35 (1986).

## A

The defendant argues that the trial court erred in failing to charge the jury that if a reasonable doubt of the defendant's guilt exists, he must be acquitted. The defendant had requested that the jury be charged as follows: "What the law does require, however, is that after hearing all the evidence, if there is something in that evidence or lack of evidence which leaves in the minds of the jury, as reasonable men and women, a reasonable doubt about the guilt of the accused, the accused must be given the benefit of that doubt and acquitted. If there is not reasonable doubt, then the accused must be found guilty. Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except [guilt], is consistent with guilt, and is inconsistent with any other reasonable conclusion. If you can, in reason, reconcile all of the facts proved

with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty.''

The defendant cites as erroneous the following language from the jury charge: ''The demonstration of guilt need be only beyond a reasonable doubt, one that a reasonable person reasonably entertains after a fair evaluation of all the evidence in the case.'' He argues that the charge connects reasonableness to the demonstration of guilt, not to the presumption of innocence. We disagree.

A jury instruction is to be examined in its entirety and its correctness tested by whether the charge as a whole presents the case to the jury so that no injustice will be done. *State* v. *Lytell,* 206 Conn. 657, 664, 539 A.2d 133 (1988); *State* v. *Simms,* supra, 416. '' 'A charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case.' *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 [1933]; *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 [1977].'' *State* v. *Reed,* 174 Conn. 287, 304–305, 386 A.2d 243 (1978). Therefore, we must examine the challenged language in the context of the entire charge.

The court clearly related the presumption of innocence to reasonable doubt. It charged the jury that the defendant is presumed innocent until proven guilty beyond a reasonable doubt; that, if an item of evidence is capable of two reasonable constructions, one of which is consistent with innocence, it is to be construed in favor of innocence; that the presumption of innocence applies to every element of the crime charged; and that the state bears the burden of overcoming the presumption of innocence by establishing proof of each element of the crime beyond a reasonable doubt. The court then

instructed the jury as to reasonable doubt as follows: "A reasonable doubt is not a doubt that is raised by one questioning simply for the sake of a doubt, nor is it a surmise, or a guess, or a speculation, or a doubt not founded upon the evidence. It is not hesitation arising from feelings of sympathy or pity for the accused or his family. A reasonable doubt is one that is based upon reason and which grows out of the evidence or the lack of evidence in the case. A reasonable doubt is one that is reasonable in light of all the evidence, and one that is honestly entertained after a thorough evaluation and careful examination of all the evidence in the case. In summary then, on this matter of reasonable doubt, an absolute demonstration of guilt is not required to convict. The demonstration of guilt need be only beyond a reasonable doubt, one that a reasonable person reasonably entertains after a fair evaluation of all the evidence in the case."

The court also apprised the jury that, if it found that the state had not proven beyond a reasonable doubt that the defendant had been the person who robbed the Brewster Pharmacy, it must find him not guilty. Furthermore, after charging the jury on the elements of robbery, the court instructed the jury that, if they did not find that all the elements of the crime had been proven beyond a reasonable doubt, then it must find the defendant not guilty. At several other points in the charge, the court referred to the state's burden of proving the defendant guilty beyond a reasonable doubt.

Viewing the charge as a whole, we are satisfied that it adequately and fairly apprised the jury of the state's burden of proof beyond a reasonable doubt. The portion pertaining to the character of reasonable doubt is substantially similar to charges we heretofore have found acceptable. See, e.g., *State* v. *Simms,* supra; *State* v. *Moss,* 189 Conn. 364, 368, 456 A.2d 274 (1983); *State* v. *Derrico,* 181 Conn. 151, 170–71, 434 A.2d 356, cert.

denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). Further, even though the court did not use the language requested by the defendant, its instruction on the presumption of innocence "substantially embodies the content of the legal proposition claimed by the defendant and we find no merit in the claimed deficiency in the charge." *State* v. *Moss,* supra, 367.

## B

Finally, the defendant argues that the court's charge on reasonable doubt failed to convey the degree of certitude necessary to convict him because it did not apprise the jury that it must have been convinced of his guilt to a "moral certainty," or by "utmost certainty," or to "near certainty." We have previously considered whether a trial court's charge on reasonable doubt requires the use of such language and have resolved this issue against the defendant. *State* v. *Simms,* supra, 419; *State* v. *Ryerson,* 201 Conn. 333, 341–42, 514 A.2d 337 (1986).

Nor do we find error in the court's admonition to the jury to disregard defense counsel's use of the term "moral certainty" in his discussion of reasonable doubt. Defense counsel had stated to the jury: "You promised me that you understood and believed in the presumption of innocence, that the accused in a criminal trial is innocent until proven guilty beyond a reasonable doubt. You promised me that you understood and believed that someone accused of a crime does not have to prove his own innocence. The burden of proof, ladies and gentlemen, is not with the accused, but with the state. This is the United States, this is not Moscow or Nicaragua. The state has a heavy burden. Proof beyond a reasonable doubt, not absolute certainty, certainly not, but moral certainty."

Following its explanation of reasonable doubt, the court stated: "It is my recollection, ladies and gentle-

men, that one of the attorneys in their argument to you in pointing out that proof beyond all possible doubt or absolute demonstration of guilt was not necessary. It was only necessary that it be proven by a moral certainty. That expression is not one that we use in the law. So, I would ask you to put that aside. Our standard is proof beyond a reasonable doubt, ladies and gentlemen, that I have instructed you on. I couldn't instruct you on this other standard of proof to a moral certainty. So, please put that expression out of your mind and just determine whether or not the State has proven guilt beyond a reasonable doubt in accordance with these instructions which I have just given you."

A trial court is required to give jury instructions that are accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict. *State v. McDermott,* 190 Conn. 20, 25, 458 A.2d 689 (1983); *State v. Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980). A criminal defendant is entitled to a clear and unequivocal charge that his guilt must be proven beyond a reasonable doubt. *State v. DelVecchio,* 191 Conn. 412, 420, 464 A.2d 813 (1983). We have recognized that " '[a]ttempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury.' *Miles v. United States,* 103 U.S. 304, 312, 26 L. Ed. 481 (1881)." Id. We have further noted that " '[j]udicial attempts to clarify the meaning of the phrase "reasonable doubt" by explanation, elaboration or illustration . . . more often than not tend to confuse or mislead.' *United States v. Pinkney,* 551 F.2d 1241, 1244 (D.C. Cir. 1976)." Id.; see also *State v. Ryerson,* supra, 342. Likewise, we find no abuse of discretion in the court instructing the jury to disregard argument by counsel tending to cloud the meaning of so important a concept as reasonable doubt. In so doing, the trial court discharged its duty to give jury instructions that are accurate in law, adapted to

the issues and adequate to guide the jury in reaching a correct verdict.

There is no error.

In this opinion PETERS, C. J., CALLAHAN and COVELLO, Js., concurred.

SHEA, J., concurring. Although I agree with the remainder of the majority opinion, I disagree with the portion of part IA holding that there was no error in the admission of the typewritten document prepared by Detective John Maia that purported to be the unsigned statement of a witness for the defense, Anthony Nichols. Nevertheless, I concur in the result because, apart from the admission of the document, Maia testified to the same critical fact contained in the unsigned statement, viz. that Nichols had named the defendant as his companion in the robbery. Such an evidentiary ruling has no constitutional implications, and, therefore, the defendant must demonstrate that the admission of the unsigned statement for the purpose of impeaching Nichols was probably harmful to him. *State* v. *Artieri,* 206 Conn. 81, 88, 536 A.2d 567 (1988). Not only is there other testimony of Maia concerning the gist of his conversation with Nichols, but it is apparent that, even if the document had been excluded from evidence, its entire substance could have been introduced through the oral testimony of Maia by using it to refresh his recollection. See C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed.) § 7.14.1. If Maia had no present memory of particular details capable of being refreshed by reference to the document, those portions of his typewritten account of what Nichols had told him would have been admissible as a past recollection recorded. Id., § 11.21.

Despite its harmlessness in this case, the admission of Maia's written account of what Nichols told him concerning the robbery was a violation of the hearsay rule

as it is still observed in this state. This typewritten version of the conversation, prepared by Maia but disavowed by Nichols, merely served to reinforce Maia's testimony as to what Nichols had told him. It was what has often been characterized as a "self-serving declaration," because it was prepared by the witness and served only to corroborate his oral testimony that Nichols had implicated the defendant in the robbery. *Hutchinson* v. *Plante,* 175 Conn. 1, 6, 392 A.2d 488 (1978); *Tough* v. *Ives,* 162 Conn. 274, 284, 294 A.2d 67 (1972); *Pluhowsky* v. *New Haven,* 151 Conn. 337, 342, 195 A.2d 645 (1964). "Letters written by a party are not evidence for him any more than his declarations." *Smith* v. *Phipps,* 65 Conn. 302, 309, 32 A. 367 (1894). Such a use of written documents to enhance the persuasiveness of the trial testimony of a witness has traditionally been regarded as analogous to lifting oneself by his own bootstraps. Id.; G. Lilly, Evidence § 52, p. 182. One vice that the orthodox view excluding writings that serve merely to corroborate the testimony of the declarant-witness has avoided is that such documentary evidence, which is normally available to a jury as an exhibit during deliberations, may be given more emphasis than testimony of a witness at trial.

The federal courts have now abandoned some restrictions upon the admissibility of prior statements, written or oral, made by a declarant-witness available for cross-examination. Fed. R. Evid. 801. Perhaps this court should follow that lead, since it would eliminate many troublesome evidentiary problems in the admission of such documentary evidence. The majority opinion, however, does not purport to take such a giant step in concluding that the admission of Maia's written version of Nichols' statement was not erroneous.

Accordingly, I disagree wih the implicit view of the majority that the admission of that document comports with our previous decisions concerning the introduction of documentary evidence.