*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ERROL ORLANDO SMITH,

      Defendant-Appellant.

UNPUBLISHED
May 23, 2019

No. 341977
Wayne Circuit Court
LC No. 17-004002-01-FC

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(e) (actor is armed with a weapon). Defendant was sentenced to 30 years to 60 years' imprisonment for each CSC I conviction, to run concurrently. We affirm.

While this appeal arises from defendant's conviction of three counts of CSC I in 2017, the acts of criminal sexual conduct underlying those charges occurred on October 2, 1996. The victim, BB, was attacked in her home, threatened with a knife and forced to perform three sexual acts by the perpetrator. A rape kit was completed in 1996, however, defendant was not identified as the perpetrator of the attack on BB until more than 20 years after the attack when testing of BB's rape kit identified defendant through his DNA. At defendant's trial regarding the attack on BB, evidence was also introduced of a separate criminal sexual assault on a different victim, AH, that occurred in 1995. Defendant's DNA was also matched to the evidence from the assault involving AH.

## I. MRE 404(B) EVIDENCE

Defendant challenges the trial court's ruling permitting the prosecution to admit other acts evidence regarding defendant's assault on AH at the trial regarding BB. Defendant alleged that the incidents involving AH and BB were too disparate and dissimilar to constitute proper MRE 404(b) evidence. The improper admission of the evidence pertaining to AH's attack, according to defendant, lacked sufficient probative value, was unduly prejudicial and improperly resulted in his conviction in this matter. Defendant also disputes the propriety of any reliance by

the trial court on the doctrine of chances in permitting the evidence regarding AH to be admitted at the trial pertaining to BB. Finally, in his standard 4 brief, defendant asserts he was denied the effective assistance of counsel because the trial court allowed the prosecutor to submit the challenged MRE 404(b) evidence.

"In order to preserve the issue of the improper admission of evidence for appeal, a party generally must object at the time of admission." *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). In addition, the objection made at trial must "specify the same ground for objection that [is asserted] on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Because defense counsel objected to the admission of the MRE 404(b) evidence, the issue is preserved for appellate review. To preserve a claim of ineffective assistance of counsel, a defendant is required to raise the issue in a motion for a new trial or a motion for a *Ginther*[1] hearing in the trial court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Because defendant did not move for a new trial or *Ginther* hearing, the issue is not preserved for appellate review.

Preserved evidentiary issues are reviewed by this Court for an abuse of discretion. *People v Roscoe*, 303 Mich App 633, 645; 846 NW2d 402 (2014). A trial court is deemed to have abused its discretion if the trial court's decision "is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 589; 739 NW2d 385 (2007). In general, a preserved "claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Petri*, 279 Mich App at 410 (citations omitted). Review of an unpreserved ineffective assistance of counsel claim, however, is "limited to mistakes apparent on the record." *Id*. (citation omitted).

The prosecutor filed a notice of intent to introduce other acts evidence under MRE 404(b). The prosecutor asserted the evidence sought to be admitted, pertaining to AH, was admissible to demonstrate defendant's intent, motive, and system in doing an act and to show a lack of consensual sexual activity. The prosecutor contended that the probative value of the evidence was not outweighed by a risk of unfair prejudice because the evidence was probative of defendant's motive, intent and system in committing the charged offenses. In support of the assertion that defendant used a common plan or system, the prosecutor noted that the incidents involving BB and AH both involved a perpetrator's use of a knife and threatening of the victim. In both cases, the perpetrator made demands of the victims to perform sexual acts and did sexually assault the victims.

Defense counsel objected to the proposed MRE 404(b) evidence asserting the lack of similarity between the two events, noting: (a) the types of knives used were different (a boning knife and a switchblade), (b) the locations varied with BB assaulted after a break-in within her personal residence and AH's assault occurring when she accepted a ride home from an individual she did not know after encountering the individual in a store parking lot, (c) the variation in the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

number and types of sexual acts involved in each incident, and (d) that BB was physically struck by the perpetrator before using a weapon to coerce BB's compliance to engage in sexual acts, while AH was verbally threatened and a knife was used to obtain her cooperation without resort to any other form of physical violence by the perpetrator. Defendant asserted the proffered MRE 404(b) evidence was more prejudicial than probative.

MRE 404(b)(1) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Thus, "[a]s a general rule, 'evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts.' " *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016) (citation omitted). Thus:

A prosecutor seeking to introduce other-acts evidence under this rule "bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity." [*Id*. at 644, quoting *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010).]

A four-prong standard is applied, in accordance with *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), to determine whether the proffered MRE 404(b) evidence is admissible. Specifically:

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Id*.]

The burden is initially on the prosecutor to establish a proper purpose for admission of the proffered evidence under MRE 404(b), which "prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question." *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017). In seeking to admit evidence pertaining to AH's assault under MRE 404(b), the prosecutor argued that the evidence established "a common plan, a scheme, a system. [Defendant] uses a knife, he threatens them, he demands sex, has them both in areas where there's nobody else around and they're close in time . . . they're barely over a year apart, both in the City of Detroit." While acknowledging the potential for "some prejudicial effect," the trial court indicated the existence of sufficiently similar circumstances to permit "the introduction of

the 404(b)." Finding that the actions need not be identical to be admissible, the trial court found the proffered evidence "would qualify under the common scheme, plan or system in doing an act . . . ."

The prosecutor asserted the propriety of offering MRE 404(b) evidence by suggesting the similarity in the crimes that occurred to BB and AH, with the knowledge that defendant's DNA was matched to both victims. While the prosecutor identified a proper purpose under MRE 404(b), "merely *reciting* a proper purpose does not actually demonstrate the *existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible." *Denson*, 500 Mich at 400. Thus, "to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test[.]" *Id*. (citation omitted).

Identified as the "touchstone" for the determination of admissibility of other acts evidence, logical relevance is evaluated by applying MRE 401 and MRE 402. *Denson*, 500 Mich at 401 (citations omitted). MRE 401 states:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In turn, MRE 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.

It is recognized that "[o]ther-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 401. For other-acts evidence to be construed as material it must relate to "any fact that is of consequence" to the matter. MRE 401. At trial, the prosecutor proffered the MRE 404(b) evidence to show a plan or system by defendant, suggesting the similarity of the events occurring to AH and BB. Defendant's primary defense, however, was to challenge the validity of the DNA results obtained, asserting error in identifying him as the perpetrator. Defendant also implied that a possible witness, Tabatha Wade, was a mutual friend of BB and defendant and could have disputed that the individual seen near BB's home after the attack was defendant. Defendant did not assert at trial that any sexual interaction with BB was consensual. As such, the other-acts evidence proffered by the prosecutor was of questionable materiality to the defenses raised.

With regard to probative evidence, as explained by our Supreme Court in *Denson*:

Evidence is probative if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, "[t]he threshold is minimal: 'any' tendency is sufficient probative force." "In the context of prior acts

evidence, however, MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something other than the defendant's propensity to commit the crime." Thus, although the prosecution might claim a permissible purpose for the evidence under MRE 404(b), the prosecution must also explain how the evidence is relevant to that purpose without relying on a propensity inference. Ultimately, the court must determine whether the prosecution has established "some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in [the] case. . . ." If not, the evidence is inadmissible. [*Denson*, 500 Mich at 401-402 (citations omitted).]

Typically, when ascertaining whether the prosecutor has provided an "intermediate inference" rather than an "improper inference of character," the similarities between the other act and the charged offense are reviewed. *Id*. at 402. "The degree of similarity that is required between a defendant's other act and the charged offense depends on the manner in which the prosecution intends to use the other-acts evidence." *Id*. at 402-403. Where, as here, "the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense, we require a 'striking similarity' between the two acts to find the other act admissible." *Id*. at 403.

Defendant was separately charged with CSC I with regard to the attacks on AH and BB. In both instances, a knife was wielded by the perpetrator and defendant was belatedly identified as the perpetrator through a match of his DNA to the evidence taken at the time of the commission of the offenses. In effect, that is where the similarities end. BB was attacked inside her residence, in the early morning hours, after defendant gained unlawful entry into her home. BB was awakened by physical violence, consisting of defendant's striking her multiple times in the face. A boning or filet knife was used to threaten BB to engage in three different sexual acts. Defendant was also alleged to have used a handgun, after the termination of the assault, to procure BB's cooperation to exit her home. BB was also verbally threatened to coerce her compliance. In contrast, AH met defendant outside a public area, where they engaged in conversation and defendant offered AH a ride to her home. AH voluntarily entered defendant's vehicle and no physical force or coercion occurred to obtain her entry into the vehicle and removal from a public area. When defendant drove in a direction inapposite to her residence and stopped in a secluded area, defendant produced a switchblade and verbally threatened AH to obtain her compliance in the removal of her clothing and engaged her in one sexual act. When the act was completed, AH was instructed to dress and exit the vehicle. Thus the only actual similarities between the two incidents are: (a) they occurred in Detroit in the early morning hours, within approximately a one-year time period, (b) the involvement of a knife; albeit different types, and a verbal threat, (c) at least one nonconsensual sexual act occurred involving vaginal-penile penetration, and (d) defendant's identification as the perpetrator in both instances because of a match of his DNA to evidence obtained from the crimes. By no stretch of the imagination can this be construed as a "striking similarity." *Denson*, 500 Mich at 403.

The mere fact that defendant is charged with CSC I in two different cases that transpired in discernably different factual circumstances lacked any probative force other than to suggest that defendant was the "kind of person" that would engage in such an assault. *Denson*, 500 Mich at 407. "In other words, the other-acts evidence created a chain of inferences dependent on the

preliminary conclusion that defendant had violent tendencies and acted consistently with those tendencies" when he attacked BB and not to establish the alleged proper purpose. *Id*. at 407-408. The other-acts evidence primarily suggested that because one CSC I case was attributable to defendant, it was highly probable that he was responsible for the assault on BB. Unfortunately, this is the type of propensity evidence that is precluded by MRE 404(b). Because the prosecutor failed to demonstrate sufficient similarity between the two incidents involving AH and BB, there was commensurately a "fail[ure] to establish 'some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in this case.' " *Id*. at 408. Consequently, the other-acts evidence was inadmissible under MRE 404(b).

This does not, however, end the inquiry with reference to the MRE 404(b) evidence. Despite finding the other-acts evidence to be inadmissible, it must then be subjected to a review for harmless error. *Denson*, 500 Mich at 409. Specifically:

> Although we find error in the admission of the other-acts evidence under MRE 404(b), we apply harmless-error review; a preserved nonconstitutional error "is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." We "focus[ ] on the nature of the error and assess[ ] its effect in light of the weight and strength of the untainted evidence." [*Id*. at 409-410 (citations omitted).]

As is readily acknowledged, when other-acts evidence is improperly admitted there is the "high risk of confusion and misuse" of the evidence by a jury for the very purpose it is not permitted—propensity. *Id*. at 410. In the circumstances of this case, however, any such potential use of the AH evidence is harmless given the definitive physical evidence that defendant's DNA matched the evidence obtained immediately after BB's assault and that BB was not familiar with and did not know or have any relationship with defendant at that time. This is particularly true because defendant did not assert, as a defense at trial, that the interaction with BB was consensual. Any inference regarding the AH evidence pales in comparison to the physical evidence establishing defendant's involvement in BB's assault. In addition, when instructing the jury, the trial court provided a limiting instruction pertaining to use of the MRE 404(b) evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Thus, the improper admission of the MRE 404(b) evidence is harmless.

Defendant also contests the trial court's use or reliance on the doctrine of chances in admitting the AH evidence. As explained by our Supreme Court:

> The doctrine of chances—also known as the "doctrine of objective improbability"—is a " 'theory of logical relevance [that] does not depend on a character inference.' " Under this theory, as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act and/or the prior occurrences were not the result of natural causes. The doctrine is commonly discussed in cases addressing MRE 404(b) because the doctrine describes a logical link, based on objective probabilities, between evidence of past acts or incidents that may be

-6-

connected with a defendant and proper, noncharacter inferences that may be drawn from these events on the basis of their frequency. If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance. [*Mardlin*, 487 Mich at 616-617 (citations omitted).]

At the outset, there is no definitive reference from the lower court record that confirms the trial court's reliance on the doctrine of chances to justify the admission of the AH evidence. At the conclusion of the prosecutor's motion for admission of the other acts evidence, the trial court indicated that the AH evidence "would qualify under the common scheme, plan or system in doing an act," and that the proffered evidence "would qualify also under a doctrine of chances[.]" Even if the trial court did, however, rely on the doctrine of chances regarding the admissibility of the AH evidence it is distinguishable from the erroneous admission of the evidence under MRE 404(b).

At trial the focus of defendant's contentions regarding the DNA evidence was the age of the evidence, assertions or implications by defendant it had not been properly stored and maintained, attacks pertaining to the chain of custody for the evidence, which led defendant to argue that the integrity of the samples had been compromised and degenerated, resulting in a lack of reliability of the resultant DNA analyses and matches. Based on this defense theory, the doctrine of chances is applicable. As discussed in *People v Breidenbach*, 489 Mich 1, 12 n 23; 798 NW2d 738 (2011):

The doctrine of chances creates a non-character basis for the admission of evidence of other acts when the other acts are related to the offense charged in such a way as to make it objectively improbable that all the acts were accidental and probable that at least one of them was the result of an actus reus. Rather than relying on the subjective character of the defendant, it relies on the objective improbability of so many accidental or unexplained events of a similar nature befalling one individual. [Citations omitted.]

In this circumstance, the probability of defendant's DNA being matched to two CSC I cases involving different victims, is less likely if, as suggested by defendant, the evidentiary samples obtained from the respective victims had been degraded or compromised in some manner. Thus, defendant's primary theory is undermined, not by propensity or character evidence, but rather the improbability of the evidence having been damaged over time yet still identifying him as the perpetrator in separate criminal acts.

In his standard 4 brief, defendant asserts that the admission of the improper MRE 404(b) evidence was attributable to the ineffective assistance of counsel.

Effective assistance of counsel is presumed and defendant bears the burden of proving otherwise. To succeed on a claim of ineffective assistance of counsel, the defendant must show that, but for an error by counsel, the result of the proceedings would have been different, and that the proceedings were

fundamentally unfair or unreliable. The defendant bears a "heavy burden" on these points. Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." [*Petri*, 279 Mich App at 410-411 (citations omitted).]

As more routinely stated, to demonstrate ineffective assistance of counsel, a defendant is required to establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defense counsel objected to the prosecution's motion to admit MRE 404(b) evidence. At trial, defense counsel also objected to the admission of Michigan State Police forensic scientist Lisa Champion's report regarding the results obtained from the AH DNA evidence and the various probabilities that arise regarding a match other than defendant in three identified populations. The trial court denied defense counsel's objections. Defense counsel did object at various stages to the MRE 404(b) evidence and applicability of the doctrine of chances. With regard to the doctrine of chances, defense counsel's "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201 (citation omitted). In terms of the MRE 404(b) evidence, unsuccessful efforts by defense counsel to preclude the admission of the challenged evidence does not equate to the ineffective assistance of counsel. See *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004) ("A particular strategy does not constitute ineffective assistance of counsel simply because it does not work.").

## II. ADMISSIBILITY OF EVIDENCE – RAPE-SHIELD LAW

Defendant asserts the trial court erred in precluding evidence pertaining to a DNA mixture, involving another male sperm donor, obtained from BB's rape kit analysis. Defendant contends that the preclusion of this information from presentation to the jury deprived him of his constitutional rights to a fair trial, to confront witnesses and to present a defense. In addition, defendant commensurately asserts in his standard 4 brief that trial counsel was ineffective for failing to secure admission of the evidence of another male donor, depriving him of his constitutional rights.

To preserve a challenge to the exclusion of evidence by a trial court, an offer of proof is generally required, unless the substance of the evidence to be excluded is sufficiently apparent from the context. MRE 103(a)(2); *People v Grant*, 445 Mich 535, 545; 520 NW2d 123 (1994). Defendant challenged the trial court's restriction of the testimony of Melanie Drayton, a Forensic Serologist with the Detroit Police Department Crime Lab in 1996, regarding potential evidence that BB had a consensual sexual encounter in close temporal proximity to her attack, and the suggestion of evidence of another male donor to the DNA sample obtained from BB's rape kit. That issue is preserved. However, because defendant did not argue that the exclusion of this

evidence violated his constitutional rights to confrontation, to a fair trial, or to present a defense, the constitutional claims are not preserved. To preserve a claim of ineffective assistance of counsel, a defendant is required to raise the issue in a motion for a new trial or a motion for a *Ginther* hearing in the trial court. *Petri*, 279 Mich App at 410. Because defendant did not move for a new trial or *Ginther* hearing, the issue is not preserved for appellate review.

As explained by this Court in *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012):

> A trial court's decision whether to admit or exclude evidence will be affirmed in the absence of a clear abuse of discretion. The trial court abuses its discretion when its decision is outside the range of principled outcomes. We review de novo the trial court's rulings on preliminary questions of law regarding the admissibility of evidence, such as the application of a statute or rule of evidence. A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. Preserved nonstructural trial error of constitutional magnitude will not merit reversal if it is harmless beyond a reasonable doubt. [Citations omitted.]

"Constitutional questions are reviewed de novo." *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009). Unpreserved constitutional error is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "In order to avoid forfeiture under a plain-error analysis, defendant must establish (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011) (citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "Even if defendant could satisfy these requirements, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Kowalski*, 489 Mich at 505-506 (citations, quotation marks, and brackets omitted). Review of an unpreserved ineffective assistance of counsel claim, however, is "limited to mistakes apparent on the record." *Petri*, 279 Mich App at 410 (citation omitted).

During Drayton's trial testimony, the prosecutor objected to questions posed by defense counsel on cross-examination implying that Drayton requested a blood sample from another individual because of information on a form suggesting BB had sex with another individual on the day of her attack. The prosecutor's objection was premised on the rape-shield law and that the evidence was not relevant, explaining:

> [W]hether or not [the victim] had a boyfriend or whether or not [Drayton] gleaned from some reports that [the victim] had a boyfriend or had sex with someone else, it's not relevant and [the victim] has testified that she didn't have any consensual sex with this defendant whose sperm has been analyzed and confirmed as being present.

The trial court clarified with defense counsel that counsel was seeking admission of information that Drayton "exclude[d] what could have been a potential donor to this DNA." When counsel confirmed the purpose of his request, the trial court queried: "How is that relevant to whether [defendant] is the donor to the DNA?" The exchange continued as follows, in relevant part:

> *Defense counsel*: Because if there's somebody else that was never excluded.
>
> *The Court*: But the DNA . . . allegedly belongs to [defendant] isn't the DNA that we're looking to exclude. I guess, I'm just – it's a person that can be excluded. You can ask her if there was more than one DNA profile that she . . . found. . . .
>
> *Prosecutor*: Well, but she couldn't because she said at the time she had to have a sample from somebody to be able to compare to exclude.
>
> *The Court*: Well, didn't we have testimony that there were only two DNA profiles done on this DNA?
>
> *Prosecutor*: The analyst that we had testified that actually redid the entire analysis on this kit, it came back to [the victim] and one male profile which eventually was confirmed to be [defendant]. There is no other DNA profiles [sic] that were obtained or made. So even if she had had [sic] sexual relations with someone else, it did not come through as a profile for comparison in this case.
>
> *Defense counsel*: And Judge, I would disagree because some of those reports - - one of the reports say there was a mixture of a minimum of at least two persons, we went through that. And then there was some other ones, in which there was found to be some male DNA that they were never able to test.
>
> *Prosecutor*: It was not enough male DNA for them to reach a conclusion.
>
> * * *
>
> It doesn't mean it was some other male DNA, it just means there wasn't enough for them to analyze.

After declining to permit the line of questioning posed by defense counsel of Drayton, finding it comprised hearsay, the trial court further explained its ruling, stating:

> I think that after [Drayton] tested the DNA, years later it's tested by Bode Technologies and Bode Technologies - - my recollection of the testimony where there were two DNA profiles that were found in the evidence that was able to be tested in those – the only two profiles that after, I guess, going through a number of processes, the only two profiles that DNA comes down to is the victim and the DNA that ultimately is tied to [defendant] and so for that reason I think

introducing this into the jury is – would, considering the totality of the evidence would be unfair prejudice.

At the outset, defendant appears to have misconstrued or misunderstood the evidence. When Kristopher Sarik, from Bode Technologies testified, he indicated he had only one "reference profile," attributed to BB for the two profiles obtained after testing BB's rape kit. When queried regarding the existence of two profiles, Sarik explained:

> Only the DNA vaginal swabs was [sic] sent over for testing due to when we did the quantifications step the oral swabs did not have a significant portion of male DNA detected to carry forward. When we took the vaginal swabs forward we had two different portions during the extraction process epithelial fraction and the sperm extraction. Those two profiles were brought forward and then analyzed and that's where the two profiles came from.

It was clarified that Sarik detected two DNA profiles from the vaginal swab obtained of BB, one of which matched BB. Sarik indicated "we were able to determine one of the samples that we did from the location was a mixture of two individuals, the sperm fraction was a single individual that represented a male." During cross-examination of Sarik, defense counsel clarified:

> *Q.* Now sir, with regards to the – you said that the vaginal swabs you ended up with two profiles, correct?
>
> *A.* That is correct.
>
> *Q.* And you said it's consistent with a mixture of two individuals, including the victim and the male contributor. Does that mean a maximum of two – a mixture of maximum of two individuals or a minimum of two individuals?
>
> *A.* A maximum of two individuals.

While confusing, it appears that defendant is suggesting that other evidence, involving a statement made by BB when receiving medical treatment or a form associated with the completion of the rape kit, suggested BB may have had a consensual sexual encounter with another individual, whose DNA was not specifically identified or eliminated as a contributor. Sarik's testimony, however, was clear that the only two profiles obtained from the vaginal swab included in BB's rape kit were attributable to the victim and a male donor. That male donor was specifically matched to defendant. BB asserted she did not know defendant when this incident occurred and defendant did not assert having engaged in a consensual sexual interaction with BB. Thus, the potential presence of other unidentifiable male DNA does nothing to diminish the inability to explain the presence of a full DNA profile attributable to defendant, when BB did not know or have any level of consensual interaction with defendant at the time of her attack.

The rape-shield statute, MCL 750.520j, states in relevant part:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's

-11-

sexual conduct shall not be admitted under sections [MCL 750.]520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

As discussed in *People v Sharpe*, 502 Mich 313, 326; 918 NW2d 504 (2018):

The rape-shield statute constitutes a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant. The statute also reflects a belief that inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury. Finally, the statute protects the privacy of the alleged victim and, in so doing, removes an institutional discouragement from seeking prosecution. [Citations and quotation marks omitted.]

It appears that the testimony of Drayton, as relied on by defendant, is taken out of context. Drayton tested DNA samples from BB's kit in 1996. At that time, the only method available to match DNA was through direct comparison to a sample obtained from an individual. Drayton tested the DNA obtained from the rape kit for BB against initial suspects, Carlos Vincent Peek and Terry Sturtevant, eliminating them as donors. Any request by Drayton for an additional sample, purportedly from an individual asserted to have been recently intimate with BB would have been simply for elimination purposes and not identification of the perpetrator. If as asserted, BB reported having engaged in a consensual sexual interaction with a known individual within a short time frame before the attack, the presence of that individual's DNA does not obviate the presence of the DNA of defendant. Further, defendant's attempt to elicit evidence from Drayton regarding a statement purportedly by BB and recorded on a form suggesting that BB had engaged in sexual activity with a known individual before the attack, was inadmissible under the rape-shield statute, 750.520j(1). The evidence obtained through later testing of the rape kit identified only two DNA profiles belonging to BB and defendant. Notably the sperm fraction identified a single male donor that was matched to defendant. As such, the trial court did not err in excluding testimony by Drayton regarding an unidentified form, completed by an unidentified individual suggesting BB's recent sexual behavior under the rape-shield statute. In addition, considerable testimony was elicited, from various individuals, regarding the DNA testing and results obtained. The manner of obtaining the DNA samples, their processing and analysis was discussed in significant detail and does not support defendant's contention that another male donor was identified.

To the extent defendant suggests trial counsel was ineffective in failing to bring the alleged evidence before the jury, he is mistaken. Defense counsel extensively cross-examined all of the witnesses presented regarding the collection and processing of the DNA evidence. He specifically attempted to engage in inquiries, with Drayton, that would imply the presence of

another source of male DNA evidence, but was stopped from pursuing this line of inquiry by the trial court's ruling on admissibility. As noted, in conjunction with other claims by defendant of having not been afforded the effective assistance of counsel, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201 (citation omitted). Further, unsuccessful efforts by defense counsel regarding the admissibility of evidence does not equate to the ineffective assistance of counsel. See *Matuszak*, 263 Mich App at 61 ("A particular strategy does not constitute ineffective assistance of counsel simply because it does not work.").

Defendant also contends that the trial court's denial of admissibility of the challenged evidence interfered with his constitutional right to confront witnesses, to present a defense and to receive a fair trial. First, defense counsel was afforded every opportunity to cross-examine the witnesses regarding all aspects of the collection and analysis of the DNA evidence in this case. "In exercising its discretion, the trial court should . . . always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *People v Adair*, 452 Mich 473, 485; 550 NW2d 505 (1996) (citation omitted). Initially, the form referenced by Drayton suggesting BB had engaged in a consensual sexual encounter some time before the attack comprised hearsay. Drayton did not speak with BB and did not complete the form. The form was not verified to be a medical record and, even if it were, Drayton could not offer testimony regarding such a document. In addition, Sarik's testimony did not substantiate defendant's assertion of the presence of unidentified male DNA. Sarik asserted that the sperm fraction obtained from the DNA evidence indicated a single male donor, who was later identified as defendant. Defendant was afforded ample opportunity to elicit testimony from all of the witnesses presented, particularly those involved in the collection, processing, and identification from the DNA evidence.

Similarly, the limitation of questioning by the trial court challenged by defendant did not interfere with his right to present a defense. The United States Constitution affords criminal defendants with the right "to present a complete defense." US Const, Ams VI, XIV; *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). Rules excluding evidence that are "arbitrary or disproportionate to the purposes they are designed to serve" may not limit or infringe on a defendant's right to present a defense. *People v Kowalski*, 492 Mich 106, 139; 821 NW2d 14 (2012) (quotation marks and citation omitted). In this instance, the defense theory was that the evidence collected for extraction of DNA material was compromised by age, improper storage, or other degenerative factors that limited the reliability of any match obtained, which defendant fully explored through the cross-examination of relevant witnesses. The potential presence of other, unidentified DNA, in the sample obtained from BB did not interfere with defendant's chosen defense. Defendant did not allege a consensual encounter with BB to explain the presence of his DNA match, particularly when BB testified that she did not know defendant at the time of her attack. Rather, defendant's theory relied on questioning the integrity of the DNA evidence by alleging that the evidence samples obtained had degraded or were not properly maintained. The trial court's denial of testimony by Drayton regarding alleged information she had obtained that BB had a consensual encounter close to the time of her attack did nothing to compromise defendant's ability to pursue his chosen defense strategy. Further, it was defense counsel who clarified with Sarik that the two DNA profiles obtained belonged to BB and a male donor, identified as defendant.

It is undisputed that a criminal defendant is constitutionally guaranteed the right to a fair trial. US Const, Am XIV; Const 1963, art 1, § 17. It is commensurately recognized that a litigant "is entitled to a fair trial but not a perfect one[.]" *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008) (citation omitted). In this trial, defendant was provided every opportunity to present his defense theory and to question witnesses. The alleged preclusion by the trial court of evidence of another potential male donor is without evidentiary support in the trial court record. Defendant was unable to successfully dispute or contradict the existing physical DNA evidence indicating that defendant's DNA was matched to the DNA of the male donor of the sperm obtained from BB's rape kit. This evidence, coupled with BB's testimony that she did not know or have any form of consensual interaction with defendant or the perpetrator of her attack serves to minimize any alleged error by the trial court in omitting the evidence as argued by defendant on appeal.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts on appeal that the trial court erred in denying his request to call the police officer, Dale Schmaltz, who initially interviewed AH when her attack occurred as a witness to impeach AH's current trial testimony regarding how the events transpired. Commensurately, defendant contends that this denial deprived him of his right to confrontation. In his standard 4 brief, defendant also asserts he was deprived of the effective assistance of counsel by defense counsel's failures to secure: (a) Tabatha Wade as a witness and (b) a DNA expert. Defendant asserts defense counsel's failures deprived him of his right to present a defense.

Generally, an offer of proof is necessary to preserve error regarding the exclusion of evidence, unless the substance of the evidence is sufficiently apparent from the context. MRE 103(a)(2); *Grant*, 445 Mich at 545. To preserve as an issue whether a trial court's evidentiary ruling denied a defendant a constitutional right, the issue must be raised by defendant in the trial court. *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004). Although defendant preserved the general issue regarding the trial court's denial of his request to present testimony from Schmaltz, his constitutional arguments, regarding his right to present a defense because of defense counsel's failure to call witnesses, and right to confrontation, are not preserved because the arguments were not raised in the trial court. To preserve a claim of ineffective assistance of counsel, a defendant is required to raise the issue in a motion for a new trial or a motion for a *Ginther* hearing in the trial court. *Petri*, 279 Mich App at 410. Because defendant did not move for a new trial or *Ginther* hearing, the issue is not preserved for appellate review.

In general, a trial court's decision to admit or exclude evidence is within the discretion of the trial court. *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013). An abuse of discretion is found to have occurred "when the decision results in an outcome falling outside the principled range of outcomes." *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006) (citation omitted). Preliminary questions of law are reviewed de novo. *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003). "Constitutional questions are reviewed de novo." *Borgne*, 483 Mich at 184. Unpreserved constitutional error is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. "In order to avoid forfeiture under a plain-error analysis, defendant must establish (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights."

*Kowalski*, 489 Mich at 505 (citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "Even if defendant could satisfy these requirements, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Kowalski*, 489 Mich at 505-506 (citations, quotation marks and brackets omitted). Review of an unpreserved ineffective assistance of counsel claim is "limited to mistakes apparent on the record." *Petri*, 279 Mich App at 410 (citation omitted).

On two occasions, defense counsel indicated to the trial court that he wished to call Schmaltz as a witness to impeach AH because her initial statement to police at the time of her attack was inconsistent when compared to more recent statements. Initially, the trial court declined the request, indicating the necessity of presenting the requested witness would be dealt with after AH testified, with the trial court noting that defense counsel had AH's statement which could be used to impeach AH. Defense counsel renewed his request for Schmaltz to be called as a witness at the conclusion of AH's testimony. The trial court discussed the necessity of distinguishing between impeachment evidence and substantive evidence, noting defense counsel had indicated that "counsel wanted to have [the police officer's testimony] used as substantive evidence[.]" The trial court explained:

> I don't think that calling the other witness gives you the opportunity to impeach the entire statement. Pretty much was gone into with the complainant and the complainant indicates she didn't recall making those statements. And so I do think an impeachment has been made. Calling the officer to testify that yes, she told me what I put in the statement, that's what I had indicated, I wasn't going to allow at this point. He isn't a witness[.]"

The trial court questioned defense counsel in an attempt to clarify "what makes [Schmaltz's anticipated testimony] evidence?" Defense counsel asserted AH's initial statement to the police describing how the event transpired goes "to the facts of the case and of what occurred. That's what substantive is[.]" Citing *People v Jenkins*, 450 Mich 249; 537 NW2d 828 (1995), regarding the use of extrinsic evidence to impeach a witness's prior inconsistent statement, the trial court opined that defense counsel had "already shown [AH's] statement is inconsistent."

During her testimony, AH indicated an inability to recall certain statements she made to police officers at the time of her original statement. The trial court suggested that having Schmaltz testify, more than 20 years after he wrote the original police report, was unlikely to elicit from Schmaltz any independent recall of the content of AH's statement. The trial court, in denying the request by defense counsel, explained:

> I don't see that as being extrinsic evidence of the prior inconsistent statement. I'm not going to allow it for substantive evidence but rather it's just impeachment evidence, which it's already gotten into, so in terms of the calling of the next witness, I do not think that it is . . . under [MRE] 403 which is cumulative evidence. She indicated she doesn't recall making those statements. You've gotten the statement in, it can't be used as substantive [sic]. It's just simply going

-15-

through that same process you went through the victim again with another witness, and so we're going to move on at this point.

On appeal, defendant asserts the trial court erred in not permitting Schmaltz to be called as a witness to impeach the testimony of AH. Defendant asserted that AH's initial statement, after her attack, as given to Schmaltz varied with regard to the details of the attack and was inconsistent with AH's testimony in defendant's trial regarding BB. The trial court denied the request, finding that Schmaltz's anticipated testimony would be cumulative because defense counsel had already used AH's statement to police to impeach AH during her testimony. In addition, the trial court indicated that any testimony elicited from Schmaltz regarding that statement could not comprise substantive evidence.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). In general, hearsay is deemed to be inadmissible except as provided by the rules of evidence. MRE 802. A prior inconsistent statement does not constitute hearsay because "[t]he purpose of extrinsic impeachment evidence is to prove that the witness made a prior inconsistent statement—not to prove the contents of the statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). A statement is found to be inconsistent when it omits a material fact previously provided by a witness, and encompasses when a witness asserts an inability to remember making the earlier inconsistent statement. *Id*.

The report prepared by Schmaltz comprised hearsay because it involved an out of court statement by BB, and as such it was not admissible. *Jenkins*, 450 Mich at 256, citing *People v Rodgers*, 388 Mich 513, 519; 201 NW2d 621 (1972). The report "was an extra judicial statement [by Schmaltz] offered to prove the truth of the thing said (that [BB] had spoken the words imputed to [her])." *Id*. at 257. As observed by the trial court, given the passage of more than 20 years since Schmaltz had spoken to BB, it was highly unlikely that Schmaltz could testify with any reasonable degree of certainty regarding his recollection of this brief conversation with BB. As such, Schmaltz would have needed the report to be shown to him to refresh his memory. If a proper foundation were made and identification of a proper hearsay exception made, parts of the report might have been introduced into evidence or read to the jury. But this had already been accomplished by defense counsel's direct impeachment of AH's testimony with the same material. "The purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *Jenkins*, 450 Mich at 256. Thus, having directly impeached AH regarding the inconsistencies in her statements and testimony, the use of Schmaltz as an additional impeachment witness was unnecessary and cumulative. Further, it would seem intuitive that impeachment through cross-examination of AH would be more effective than through the use of other witnesses in terms of challenging AH's credibility.

Defendant asserts that the trial court's denial of defense counsel's request to call Schmaltz as an impeachment witness regarding AH deprived defendant of his constitutional right of confrontation. As guaranteed by US Const, Am VI and Const 1963, art 1, § 20, a defendant does have a right to confront the witnesses against him. Accordingly:

> If a defendant has been limited in his ability to cross-examine the witnesses against him, his constitutional right to confront witnesses may have been violated. Yet, there are limits to this right to confront witnesses. The Confrontation Clause " 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " Rather, the Confrontation Clause protects the defendant's right for a *reasonable* opportunity to test the truthfulness of a witness' testimony. [*People v Ho*, 231 Mich App 178, 189-190; 585 NW2d 357 (1998).]

It is difficult to construe how the trial court's denial of the presentation of Schmaltz as a witness for the purpose of impeaching AH could violate defendant's right of confrontation when defendant was afforded, and used, the opportunity provided to directly impeach AH's testimony by cross-examining AH. In other words, because AH was available at trial for cross-examination with regard to her prior statements, and her prior statements were used for purposes of impeachment and not their truth, defendant's constitutional right of confrontation was not violated. See *Crawford v Washington*, 541 US 36, 59 n 9; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (citations and quotation marks omitted) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. It is therefore irrelevant that the reliability of some out-of-court statements cannot be replicated, even if the declarant testifies to the same matters in court. The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").

While it is indisputable that a defendant has a right to confront witnesses, in accordance with MRE 611(a), a trial court has a commensurate obligation to

> "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." [*People v Willis*, 322 Mich App 579, 591; 914 NW2d 384 (2018), quoting MRE 611(a) (quotation marks omitted).]

It is generally accepted that a trial court is permitted "wide latitude to impose reasonable limits on cross-examination to ensure relevancy or because of concerns regarding such matters as harassment, prejudice, confusion of the issues, and repetitiveness." *People v Biddles*, 316 Mich App 148, 153; 896 NW2d 461 (2016). In this instance, defendant was afforded an opportunity to question the credibility of AH and to impeach her through her prior statements to police. The anticipated testimony of Schmaltz would not have provided any additional or useful information to the jury and did not deprive defendant of his right to confrontation.

In his standard 4 brief, defendant also asserts trial counsel was ineffective for failing to produce Tabatha Wade as a witness on his behalf at trial and a DNA expert for the defense. At his sentencing, during allocution, defendant implied that Wade should have been called as a defense witness because she was a mutual friend of BB and defendant. While the lower court record indicates that the trial court granted defendant's request for the appointment of a private

investigator, there is no indication that defendant requested or sought the appointment of a DNA expert to testify on defendant's behalf.

At trial, now retired Detroit Police Sergeant Steven Plieth testified that he, and his partner, initially secured the crime scene and obtained preliminary information from BB regarding the assault. Plieth recalled speaking with Wade. Wade told Plieth "that she may have seen a person fitting the clothing description [of the perpetrator] that was given to us" in the area of BB's residence around 1:30 a.m. on the day of the assault. In his report, Plieth "wrote down that [Wade] saw a possible person fitting the description in the area at 1:30 a.m." There is no suggestion that Wade saw distinguishing features of the possible perpetrator or that she was able to discern that individual's identity; merely that she observed someone in the area wearing a particular type of clothing.

Defendant contends on appeal that trial counsel was ineffective for failing to call Wade as a witness at trial and for not presenting or obtaining a DNA expert on defendant's behalf. Initially, defendant's argument on appeal with regard to this issue is cursory and fails to flesh out the specifics of his allegations of error. As is routinely recognized:

> An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it. [*People v Henry*, 315 Mich App 130, 148-149; 889 NW2d 1 (2016) (citations and quotation marks omitted).]

Regardless, the "[e]ffective assistance of counsel is presumed" and "[t]he defendant bears a heavy burden of proving otherwise." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.' " *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citation omitted). This Court "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Id.*, quoting *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Defendant also contends that defense counsel was ineffective for failing to procure a DNA expert for trial. To the extent discernable from the record, this contention arises for the first time on appeal. Defendant has failed to make an offer of proof pertaining to the substance of any favorable testimony that such an expert would have offered. As such, defendant's suggestion that the retention and use of an independent DNA analyst would have been beneficial to his case or support his defense theory regarding the degradation of the DNA samples comprises mere speculation. "In other words, defendant has failed to show that the retention of an independent expert would have altered the outcome of the lower court proceedings." *Payne*, 285 Mich App at 190.

Defendant also argues that defense counsel was ineffective for failing to have Wade testify at trial, implying that her testimony would have been favorable to defendant. Once again,

defendant has failed to provide an offer of proof regarding Wade's anticipated exculpatory testimony. While defendant asserts counsel was ineffective for failing to call Wade as a witness at trial, he has not asserted that counsel did not investigate Wade to determine her viability as a favorable witness on defendant's behalf. This comprises an important distinction. An attorney's failure to investigate can comprise ineffective assistance of counsel. *People v Anderson*, 322 Mich App 622, 630; 912 NW2d 607 (2018) (citation omitted). In contrast, "[a]n attorney's decision whether to retain witnesses . . . is a matter of trial strategy," and "[a] defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *Payne*, 285 Mich App at 190. Based on the record and the content of defendant's argument on appeal, the decision by defense counsel to not secure Wade as a witness at trial, appears to fall into the latter category. As such, this Court will not second-guess the decision by defense counsel, as comprising a matter of trial strategy. *Id*. (citation omitted).

The only evidence or information available is that the police did speak with Wade at the time of the events involving BB. Wade indicated that she observed someone, who might be the perpetrator, in the area of BB's residence on the relevant date and time, dressed in accordance with the clothing description obtained by police. BB described her perpetrator to police as wearing a hoodie in a manner that obstructed his facial features. No information was provided to suggest that Wade's testimony would serve to benefit defendant if her only observation was of the type of clothing worn by an individual she saw and not a definitive assertion that the individual she observed was not defendant. There is no information regarding Wade's physical proximity to the individual observed, the duration of her observation, or whether the conditions existing at the time of her observation assisted to clarify or hinder her ability to discern any details regarding the individual's appearance. Even if Wade observed an unidentified individual in the vicinity at the approximate time of the occurrence of the attack on BB, this fact does not obviate defendant's concurrent presence, albeit unobserved by Wade. For reasons of trial strategy, defense counsel may have elected to not present Wade as a witness for defendant. This decision will not be considered in hindsight by this Court to evaluate the competence of defense counsel. *Unger*, 278 Mich App at 242-243.

Further, if the value of Wade's testimony was to suggest that an individual, other than defendant, was the possible perpetrator and in the vicinity at the relevant place and time, this information was made known to the jury through the testimony of Plieth and BB, who testified that her mother saw someone running in the vicinity when BB appeared at her parents' home on the night of the attack. As such, defendant's assertion of ineffective assistance of counsel cannot be established because defendant was not deprived of a substantial defense. *Payne*, 285 Mich App at 190.

## IV. CONCLUSION

Defendant's convictions are affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto